NUMBER 13-99-660-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


PATRICIA GRIEVE , Appellant,


v.



RED ROOF INNS, INC. , Appellee.

__________________________________________________________________


On appeal from the 105th District Court

of Nueces County, Texas.

__________________________________________________________________


O P I N I O N



Before Justices Dorsey, Rodriguez, and Castillo

Opinion by Justice Dorsey




Patricia Grieve appeals the order of the 105th judicial district court granting Red Roof Inns, Inc.'s motion for summary
judgment. Grieve sued Red Roof Inns in 1998 for injuries she alleges to have sustained in a fall at one of Red Roof's
properties. She alleges that while loading her car to leave the motel, she tripped on a step in the motel parking lot. She
sued Red Roof for failing to maintain a reasonably safe premises.

Red Roof moved for summary judgment on both traditional and no-evidence grounds. Compare Tex. R. Civ. P. 166a(c)
("traditional" summary judgment rule) with Tex. R. Civ. P. 166a(i) ("no-evidence" summary judgment rule). Grieve filed a
timely response to Red Roof's motion. Red Roof filed objections to portions of Grieve's summary judgment evidence.
Particularly, Red Roof objected to the testimony of Grieve's expert, Jack Tollett. The trial court granted Red Roof's motion
on unspecified grounds and also sustained its objections to Tollett's testimony and struck it from the record. Although Red
Roof lodged a variety of objections to Tollett's testimony, the trial court did not specify on what basis it sustained the
objection.

Grieve brings essentially two points on appeal. First, she contends the evidence is sufficient to raise a genuine issue of
material fact on her cause of action for premises liability even without the testimony of her expert, Tollett. Second, she
argues that Tollett's testimony was improperly excluded, and if that evidence is included in the summary judgment record,
the trial court erred in granting summary judgment because a genuine issue of material fact exists with regard to her cause
of action for premises liability.

I. Striking of the Expert Testimony



We first address whether the trial court properly struck Tollett's deposition. Red Roof objected to Tollett's testimony on
grounds that Tollett was not qualified to be an expert and that his testimony was unreliable. See Tex. R. Evid. 104(a); Tex.
R. Evid. 702.

Whether an expert is qualified is a preliminary question to be decided by the trial court. Gammill v. Jack Williams
Chevrolet, Inc., 972 S.W.2d 713, 718 (Tex. 1998); Broders v. Heise, 924 S.W.2d 148, 151 (Tex. 1996). The party offering
the expert's testimony bears the burden to prove that the witness is qualified under Rule 702. Gammill, 972 S.W.2d at 718.
"The offering party must demonstrate that the witness possesses special knowledge as to the very matter on which he
proposes to give an opinion." Id. (internal quotes omitted).

Admissibility of expert testimony rests largely within the discretion of the trial court. E.I. du Pont de Nemours and Co.,
Inc. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995). The test for abuse of discretion is whether the trial court acted without
reference to any guiding rules or principles. Id.; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). "The test is not whether, 'in the opinion of the reviewing court, the facts present an appropriate case for the trial
court's action.'" Robinson, 923 S.W.2d at 558 (citing Downer, 701 S.W.2d at 241-42). Determining that the appellate court
would have ruled differently or that the trial court made an error in judgment does not amount to an abuse of
discretion.Robinson, 923 S.W.2d at 558. However, we note that a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). "A trial court has no
'discretion' in determining what the law is or applying the law to the facts." Walker, 827 S.W.2d at 840.

When the trial court does not specify the ground on which it excluded the testimony, we will affirm the trial court's ruling if
any ground is meritorious. K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000). Accordingly, we address each of
Red Roof's objections to Tollett's testimony, in turn, to determine whether the trial court could have sustained Red Roof's
objection without abusing its discretion.

Rule 702 of the Texas Rules of Evidence requires that expert testimony is limited to testimony from experts who are
qualified by virtue of their scientific, technical, or other specialized knowledge to assist the trier of fact to understand the
evidence or to determine a fact in issue. Tex. R. Evid. 702. There are two components to the issue of whether an expert is
"qualified" under Rule 702. Gammill, 972 S.W.2d at 719-20. First, we must determine if the expert is truly qualified
because of his specialized knowledge, skills, background or training to testify. This determination requires inquiry into the
qualifications of the expert to render the precise opinions and testimony the expert seeks to offer in the case. Id. Also, this
determination requires inquiry into whether the expert truly has knowledge superior to that of the common knowledge of
the ordinary juror. Honeycutt, 24 S.W.3d at 360. The second component of determining whether an expert is qualified
under Rule 702 involves determining whether the expert's testimony is relevant and reliable. Gammill, 972 S.W.2d at
719-20; E.I. du Pont de Nemours and Co. v. Robinson, 923 S.W.2d 549, 5567- 57 (Tex. 1995). Though the components of
"qualified," "relevant," and "reliable" are sometimes almost inextricably interrelated, severing the analysis into three
distinct inquiries simplifies matters.

A. Was Tollett Qualified by Virtue of Specialized Knowledge in

the Precise Subject-Matter of his Opinions?


We turn to the precise question of whether Tollett was adequately qualified to be an expert in this case by virtue of his
specialized knowledge, skill, experience, training or education. The trial court was required to determine if Tollett had
"knowledge, skill, experience, training, or education" that would "assist the trier of fact." See Tex. R. Evid. 702. In
determining an expert's qualification, the focus should be on the expert's knowledge, skill, experience, training or education
with regard to the condition underlying the claim and the relevant standard of care. Gammill, 972 S.W.2d at 719-20.
Grieve had the burden of establishing Tollett's qualifications. Broders, 924 S.W.2d at 151.

It is not enough to show merely that the expert has greater knowledge in the general topic about which his testimony
concerns. Gammill, 972 S.W.2d at 719. Rather, the expert must be shown to have specialized knowledge regarding the
precise subject about which he is offering his opinion. Id. For example, the Texas Supreme Court has held that an expert
in the design and testing of fighter planes and missiles was not sufficiently qualified to render opinions regarding design
defects in an automobile accelerator and restraint system or the cause of death of a passenger in the car at issue in the
case.Id. The court has held also that an emergency room doctor was not qualified to be an expert on the issue of what
actually caused the death of a head trauma patient who was treated in the emergency room. Broders v. Heise, 924 S.W.2d
at150-154. The court reasoned that while the doctor might be qualified to testify regarding the standard of care for
emergency room doctors, he was not qualified to offer an expert opinion regarding the effectiveness of various
neurosurgical treatments and whether a particular treatment would have saved the patient's life or caused her death. Id. at
153. If an expert is not qualified to render the particular opinion he renders in a particular case, his testimony is
inadmissible because it does not rise above mere speculation, and thus, does not offer genuine assistance to the jury. Id. 

The evidence before the trial court showed that Tollett is a consultant who performs compliance work for owners of
buildings and parking structures to determine if the structures comply with the ADA and other safety-type regulations. He
has performed this type of consulting since 1985. He also worked as an accident investigator and in other mechanical
capacities from 1969 through 1987 with Union Pacific Railroad. His academic background is in the field of economics. He
has attended numerous conferences for training in EEOC, ADA, and Fair Housing Act, including facilities assessment
training. He co-authored the City of Fort Worth's fair housing ordinance to bring it into compliance with HUD standards
on handicap access and negotiated the City of Fort Worth's Fair Housing Contract with HUD. All this seems to make him
imminently qualified to answer the simple question of whether the height of a step complied with the city building code,
whether the step was unsafe, and what alternative designs might make the step safer. Since that is, essentially, all he
testified about in this case, the trial court could not have come to the conclusion that he was unqualified by virtue of his
training, background and specialized knowledge to give the testimony he gave in this case.

B. Was Tollett's Knowledge Beyond that of the Average Juror?

The second part of determining whether an expert is "qualified" is to whether the expert's opinions are beyond the average
juror's common knowledge. Honeycutt, 24 S.W.3d at 360. Last year, the Texas Supreme Court held that the fact "[t]hat a
witness has knowledge, skill, expertise, or training does not necessarily mean that the witness can assist the
trier-of-fact."Honeycutt, 24 S.W.3d at 360. Rather, expert testimony can assist the trier-of-fact only when the expert's
knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of-fact
understand the evidence or determine a fact issue. Id. "When the jury is equally competent to form an opinion about the
ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the
expert's testimony." Id. Thus, expert testimony is not admissible when it concerns a matter that "obviously is within the
common knowledge of jurors because such testimony, almost by definition, can be of no assistance." Id. Thus, we must
determine whether Tollett's testimony was "obviously within the common knowledge of jurors." See id.

We do not believe that trial court could have stricken Tollett's testimony on this basis. Tollett testified that he was a
consultant that assists building owners in determining whether their buildings comply with the ADA and the Fair Housing
Act, and also evaluates safety risks. In those safety consultations, he advises property owners what they might do to negate
or minimize the risk from their structures.

Tollett testified that after being retained by Grieve, he traveled to the site of Grieve's accident where Grieve fell, and
conducted a thorough inspection of the area. He testified that the step in question is an uneven step that measures 2" in
height on the right side, dips to 2 3/4" in the center of the step, and raises back to 2 1/4" on the left. It is a single step
running from a concrete pad on the parking lot to a covered walkway. He described the step in detail, and attached pictures
of it to his deposition. 

Also in connection with being retained as a consultant in this case, Tollett reviewed the southern building code, which
governed Red Roof's property at the time of Grieve's accident. Tollett testified that the relevant provision of the code
requires steps to be between 4-8" in height because that is the natural gait of a normal person and that a height lower than
that would cause a possible tripping hazard. Tollett testified that the four-inch requirement is common. He also testified
that the step that Grieve fell on was not painted or otherwise marked in any way to differentiate it from the concrete
surrounding it, and was difficult to see because it blended in with its surroundings.

Tollett also offered suggestions on ways that Red Roof could have made the area safer. He suggested that Red Roof could
have spent approximately $35.00 per step to paint it a high-grade safety yellow and add non-slip material, which, he
opined, would bring it into compliance with the code. He also suggested that, alternatively, Red Roof could have poured
concrete on the areas in a manner that would create a ramp-like raise instead of a step, which Tollett opined would also
bring the area into compliance with the code.

Tollett's ultimate opinions were that (1) the step created an unreasonably dangerous condition, and (2) a reasonably prudent
property owner would have seen it and done something to make it safer. 

In K-Mart Corp. v. Honeycutt, the Texas Supreme Court held that the trial court did not abuse its discretion by excluding
the testimony of a plaintiff's "human factors and safety expert." Honeycutt, 24 S.W.3d at 359-60. The court held that none
of that expert's opinions would assist the trier-of-fact to understand the evidence or to determine a fact issue involved in the
case. Id. In that case, Lisa Honeycutt was injured when several shopping carts were pushed into her back as she sat on the
lower rail of a shopping cart corral that was missing the upper rail. Id.

Honeycutt's safety and human factors expert opined that:

(1) the lack of a top railing created an unreasonable risk because it served as an invitation for people to sit on the lower railing;

(2) Honeycutt's sitting on the lower railing was not unreasonable conduct;

(3) the lack of a top railing caused Honeycutt's injuries;

(4) the store employee did not receive proper training for pushing shopping carts; and

(5) the store's employee did not keep a proper lookout while pushing the carts into the corral.

Id. at 359.

The court held that the expert's opinions were not helpful to the jury because they involved matters that were within the
jury's "collective common sense." Id. at 361. The court reasoned that the expert was no more qualified to render those
opinions than the jury and his testimony effectively invaded the province of the jury. Id. Because the issues involved
matters within the "average juror's common knowledge," the court held that the jury did not need any special interpretation
of the facts to determine whether it was reasonable for Honeycutt to sit on the railing and whether the person who pushed
the shopping carts into her was negligent.

The situation presented in this case, though, is a far cry from Honeycutt. Tollett's testimony concerned whether the step at
issue complied with the building code and whether a reasonable building owner would recognize that this step did not
comply with the code and presented a danger. These are matters that fall outside the common knowledge of the average
juror. We believe this is exactly the kind of scientific, technical, or other specialized knowledge that would assist the trier
of fact to understand the evidence or to determine a fact in issue that is envisaged by Rule 702. See Tex. R. Evid. Ann.
702. The trial court could not have come to any other conclusion on that question. Thus, we hold that the trial court did
not base its exclusion of Tollett's testimony on the grounds that Tollett testified on matters that were not helpful to the jury
because they were within the average juror's common knowledge.

C. Was Tollett's Testimony both Relevant and Reliabile?



Finally, the Texas Supreme Court has also held that in addition to showing that an expert witness is qualified, Rule 702
also requires the proponent to show that the expert's testimony is relevant to the issues in the case and is based upon a
reliable foundation. Robinson, 923 S.W.2d at 556. We first look to see if the proposed testimony is relevant using the
traditional relevancy analysis under Rules 401 and 402 of the Texas Rules of Civil Evidence. "To be relevant, the proposed
testimony must be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Robinson,
923 S.W.2d at 556 (internal quotes omitted). Whether the step on Red Roof's property violated the building code and was
unsafe is certainly relevant to the issues of whether a dangerous condition existed on Red Roof's premises and whether Red
Roof should have been aware of the unsafe condition. The trial court could have made no conclusion other than that
Tollett's proposed testimony was relevant.

The next prong of the Robinson analysis requires this Court to determine whether the methodology underlying Tollett's
analysis that led to his ultimate conclusions was reliable. Id. at 557. "In addition to being relevant, the underlying
scientific technique or principle must be reliable." Id. "Scientific evidence which is not grounded 'in the methods and
procedures of science' is no more than 'subjective belief or unsupported speculation.'" Id. (citing Daubert, 509 U.S. at 590.
The court reasoned that "[u]nreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under
Rule 702." Id. The court identified several factors to consider in making the threshold determination of whether scientific
evidence is reliable, and thus admissible under Rule 702, including:

(1) the extent to which the theory has been or can be tested;

(2) the extent to which the technique relies upon the subjective interpretation of the expert;

(3) whether the theory has been subjected to peer review and/or publication;

(4) the technique's potential rate of error;

(5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and

(6) the non-judicial uses which have been made of the theory or technique.

Id. 

While we believe that Tollett's proposed testimony would fair well under these standards, we do not believe this is the type
of scientific testimony upon which the Court in Robinson intended to focus. Rule 702 allows testimony from experts who
are qualified by virtue of technical or specialized knowledgeother than "scientific" expertise. Tex. R. Evid. 702. Scientific
evidence includes evidence such as "[n]eutron activation analysis, sound spectrometry (voice prints), psycholinguistics,
atomic absorption, remote electromagnetic sensing, and bite mark comparison." Id. at 553 (citing Giannelli, The
Admissibility of Novel Scientific Evidence: Frye v. United States, a Half-Century Later, 80 Colum. L. Rev. 1197, 1198
(1980)).

In Robinson, the court was taking aim at "junk science." Robinson, 923 S.W.2d at 554. Courts at that time were beginning
to take a hard look at the proliferation of the use of expert testimony in litigation. The court in Robinson noted that
"[p]rofessional expert witnesses are available to render an opinion on almost any theory, regardless of its merit." Id. at 553.
And "[w]hile many of these experts undoubtedly hold reliable opinions which are of invaluable assistance to the jury, there
are some experts who 'are more than willing to proffer opinions of dubious value for the proper fee.'" Id. (citing 2
commonplace"); 2 Goode et al., Guide to the Texas Rules of Evidence: Civil and Criminal § 702.2, at 17 (Texas Practice,
2d ed. 1993).

The problem was perceived to be that regardless of the true credentials of the expert, "'to the jury an 'expert' is just an
unbridled authority figure, and as such he or she is more believable.'" Id. (citing Richey, Proposals to Eliminate the
Prejudicial Effect of the Use of the Word "Expert" Under the Federal Rules of Evidence in Civil and Criminal Jury Trials,
154 F.R.D. 537, 544 (1994)). The courts were recognizing that not only was the prejudicial influence of the term "expert" a
problem, but also problematic was the difficulty inherent in evaluating scientific evidence. "Jurors are often expected to
understand complex testimony regarding arcane scientific concepts and are even asked to resolve issues on which the
experts cannot agree." Id. These problems led some commentators to believe that ostensibly scientific testimony may sway
a jury even when as science it is palpably wrong. Id. However, not all the language in Robinson applies to expert
testimony that is not "scientific" in nature. See Gammill, 972 S.W.2d at 727.

Both the Texas Supreme Court and the United States Supreme Court have held that the standards under Daubert and
Robinson for determining when expert scientific evidence may be admitted do not apply to allevidence provided by an
expert witness. See Gammill, 972 S.W.2d at 727 and Carmichael, 526 U.S. 137, 141, 119 S.Ct. 1167 (1999). Those
standards are only applied strictly when the expert proposed seeks to offer scientific testimony. Id. All types of expert
testimony still must be reliable and relevant, but the criteria for assessing reliability and relevance may vary depending on
the nature of the evidence. Gammill, 972 S.W.2d at 727. In discharging its duty as a gatekeeper, the court must determine
how the reliability of particular testimony is to be assessed. Id. at 726. In certain cases, experience alone will be sufficient
to show the reliability of the expert's methodology used to arrive at his opinions. Id.

With those principles in mind, we must assess the reliability of Tollett's testimony using the Robinsonfactors for guidance.
We note that his testimony is very limited. He simply testified that as an expert in building safety and compliance with
building codes, his opinion is that the step at issue did not meet the requirements of the code in effect at the time of the
incident and that it created a dangerous condition. If his testimony had gone much further than it did, we might be faced
with a different question. Tollett merely reviewed the relevant building code, went to the site of the accident, observed the
conditions, took measurements, took pictures, and recorded his observations and conclusions. His actions, opinions, and
claims of authority set forth in his deposition were quite limited.

The trial court could not have come to the conclusion that Tollett's testimony was unreliable. We useRobinson for a model
in assessing its reliability. First, Tollett's "theories" are readily testable. His theories are that (1) the step violates the
building code, (2) that it was unsafe, (3) that it could easily and cheaply have been made safer. Save for Tollett's opinion
that it was unsafe, which is ultimately left soundly to the discretion of the jury, Tollett's other opinions are easily subject to
repetition and contradiction. Likewise, we cannot see how Tollett's techniques relied upon his subjective interpretation,
except for his ultimate opinions. Finally, the remaining Robinson factors are simply inapplicable in this case--i.e., whether
Tollett's theory has been subjected to peer review and/or publication, the technique's potential rate of error, whether the
underlying theory or technique has been generally accepted as valid by the relevant scientific community, and the
non-judicial uses which have been made of the theory or technique. We hold that Tollett's opinions were reliable. This is
not to say that they are correct, or even unassailable, but the methodology used by Tollett in making his opinions was
reliable. See Gammill, 972 S.W.2d at 928. Accordingly, we hold that the trial court abused its discretion if it struck
Tollett's testimony on grounds that it was not relevant or reliable according to Rule 702. Having determined that the trial
court could not have sustained Red Roof's objections to Tollett's testimony based on Rule 702, we turn to Red Roof's other
objections to Tollett's testimony.

II. Additional Objections to Tollett's Testimony

Red Roof objected to Tollett's testimony for a variety of other reasons. First, it relied on "numerous objections" made on
the record during the taking of Tollett's deposition. In the summary judgment proceeding, Red Roof requested a ruling on
each of those objections. The trial court could not have sustained this objection and accordingly stricken Tollett's
testimony because the objection is too vague.

Also, Red Roof objected to three opinions rendered by Tollett on grounds they were hearsay, impermissibly conclusory,
wholly speculative and/or lacked the proper predicate. Those opinions are that: (1) the step on its property violated the
building code, (2) the area was unreasonably dangerous, and (3) the condition of the area caused the injuries alleged by
plaintiff. Red Roof also objected to Tollett making any reference to the building code in his deposition because the code
itself had not been properly authenticated or attached to his deposition. Finally, Red Roof objected to Tollett's testimony
on grounds that Tollett was an interested witness.

However, defects in the form of affidavits or attachments to a summary judgment motion will not be grounds for reversal
unless those defects are specifically pointed out by objection by an opposing party prior to ruling on the summary judgment
with the opportunity, but refusal, to amend. See Tex. R. Civ. P. 166a(f). All these additional objections are objections to
the form of Tollett's deposition testimony. Cf. Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 113 n.9 (Tex.
App.--Houston [14th Dist.] 2000, no pet.) (noting that objections to summary judgment evidence based on hearsay,
speculation, lack of foundation, that the affiant does not have personal knowledge or is not competent are objections to
form). If a party objects to summary judgment evidence on grounds of form, they must give the nonmovant an opportunity
to amend the evidence to correct the problems. See Tex. R. Civ. P. 166a(f). While Red Roof arguably lodged specific
objections based on the form of Tollett's testimonial evidence, Red Roof did not give Grieve an opportunity to correct the
problems in form. Thus, we must presume that the trial court did not sustain Red Roof's objections to the form of Tollett's
testimony.

Accordingly, we find no legitimate basis upon which the trial court could have stricken Tollett's testimony. Thus, we hold
the trial court abused its discretion by striking the deposition testimony of Jack Tollett contained in Grieve's response to
Red Roof's motion for summary judgment and we will consider that testimony in determining whether the trial court erred
in granting summary judgment in favor of Red Roof. We now turn to the question of whether the trial court erred in
granting Red Roof's motion for summary judgment.

II. Propriety of the Grant of Summary Judgment

A. Standard of Review

We review a trial court's grant of traditional summary judgment by using the same standards used by the trial court. SeeTex.
R. Civ. P. 166a(c); Nixon v. Mr. Property Management, 690 S.W.2d 546, 548-49 (Tex. 1985). To prevail, the moving
party must conclusively establish the absence of any genuine question of material fact and entitlement to judgment as a
matter of law. See Tex. R. Civ. P. 166a(c). The motion must state the specific grounds upon which judgment is sought. Id.
The movant must either prove all essential elements of his claim, MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986), or
negate at least one essential element of the nonmovant's cause of action. See Randall's Food Markets, Inc. v. Johnson, 891
S.W.2d 640, 644 (Tex. 1995).

In a traditional summary judgment proceeding, once the movant has established a right to summary judgment, the burden
shifts to the nonmovant to respond to the motion by presenting to the trial court any issues that would preclude summary
judgment. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979). When, as in this case, the
summary judgment does not specify or state the grounds relied on, the summary judgment will be affirmed on appeal if any
of the grounds presented in the motion are meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

A party may also file a motion for a no-evidence summary judgment on grounds that no evidence exists of one or more
essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. See Tex. R.
Civ. P. 166a(i). Rather than being required to show entitlement to judgment as a matter of law, a movant seeking a
no-evidence summary judgment is merely required to point out which elements of the opposing party's claim or defense the
movant contends are not supported by any evidence. See id. Then, the burden shifts to the nonmovant to produce evidence
on the challenged element that raises a genuine issue of material fact. Id. The court must grant the motion if the
nonmovant fails to produce such evidence. Id.

We first address the no-evidence grounds contained in Red Roof's motion. Red Roof moved for judgment on grounds that
Grieve could produce no evidence that: (1) Red Roof had actual or constructive knowledge of some condition on the
premises that posed an unreasonable risk of harm; (2) there existed any condition posing an unreasonable risk of harm, and
(3) that Grieve's alleged injuries were caused by a dangerous condition on the premises. An owner or possessor of property
is not an insurer of the safety of those who come onto the premises. Mellon Mortg. Co. v. Holder, 5 S.W.3d 654, 658 (Tex.
1999). The parameters of the duty owed by the property owner or possessor depends on the status of the person who enters
the property. Rosas v. Buddie's Food Store, 518 S.W.2d 534, 536 (Tex. 1975).

In this case, Grieve was an invitee on Red Roof's property. An invitee has been described as one who enters on another's
land with the owner's knowledge and for the mutual benefit of both. Id. Landowners owe to invitees the duty to exercise
ordinary care to protect invitees from not only those risks of which it was actually aware, but also those risks of which it
should have been aware after reasonable inspection. Motel 6 G.P., Inc. v. Lopez, 929 S.W.2d 1, 3 (Tex. 1996); see also
Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). In order to prevail on her premises liability cause of
action, Grieve was required to show:

(1) that Red Roof had actual or constructive knowledge of some condition on the premises;

(2) that the condition posed an unreasonable risk of harm;

(3) that Red Roof did not exercise reasonable care to reduce or eliminate the risk; and

(4) that Red Roof's failure to use such care proximately caused Grieve's injuries.

 Motel 6, 929 S.W.2d 3.

B. Actual or Constructive Knowledge

We first address whether Grieve produced any evidence in response to Red Roof's 166a(i) motion to show that Red Roof
had actual or constructive knowledge of the condition of the premises at issue in this case. Grieve complains about an
allegedly defective step in the motel parking lot. She claims to have fallen on a step that was a short step--less than the 4
inches required in the Corpus Christi city code--that was painted in a light color that blended with the sidewalk making it
difficult to see.

"[T]he existence of actual or constructive knowledge of a premises defect is a threshold requirement for such a claim." Id.
The landowner must have known that the condition existed and realized that the condition posed an unreasonable risk of
harm in order to be held liable. See Restatement (Second) of Torts § 343 (1965); see also Adam Dante Corp. v. Sharpe,
483 S.W.2d 452, 454-55 (Tex. 1972). Many times, in premises liability cases, the focus centers on whether the landowner
knew of a condition on the premises that was temporary in nature. See e.g. Wal-Mart Stores, Inc. v. Gonzalez, 968 S.W.2d
934, 936 (Tex. 1998) (spilled macaroni); Corbin v. Safeway Stores, Inc., 648 S.W.2d 292, 296-97 (Tex. 1983)(grapes on
the floor); Whalen v. Condominium Consulting and Management Services, Inc., 13 S.W.3d 444, 447 (Tex. App.--Corpus
Christi 2000, pet. denied) (protruding board on boardwalk). Constructive knowledge of a dangerous condition can be
shown when the condition causing the fall was present on the premises for a sufficient length of time that, in the exercise of
ordinary care, it should have been discovered and removed. See Keetch v. Kroger, 845 S.W.2d 262, 264 (1992).

We hold that Grieve has presented enough evidence to raise a fact question of whether Red Roof had actual or constructive
knowledge of the dangerous condition of the step. First, Grieve offered excerpts from the testimony of a Red Roof Inns
manager, Dave Bigham. Bingham testified that he was familiar with the area where Grieve fell. He described the sidewalk
as uneven and an area that collects water from air conditioners. Bigham said, "It's not a very well laid sidewalk. It swells
in the center." Bigham knew that other sidewalks around the motel included ramps instead of a small step like the one
where Grieve fell. In addition, Bigham said that the area where this accident occurred had not changed during his seven
years of management. This amounts to some evidence that Red Roof had constructive knowledge of the dangerous
condition of the parking lot where Grieve fell.

Moreover, Tollett's testimony that the step in question did not comply with the building code is additional evidence that
Red Roof should have known that the step in question was unreasonably dangerous. (1) While every violation of a building
code does not, per se, create an unreasonably dangerous condition, evidence that a step did not comply with the building
code can amount to some evidence that the property owner should have been alerted to a potentially dangerous condition on
his premises.

C. Unreasonable Risk of Harm/

Reasonable Care to Eliminate the Risk



We next determine whether Grieve produced any evidence to establish the second element of her premises liability cause of
action--i.e., that the condition posed an unreasonable risk of harm. See Motel 6, 929 S.W.2d 3. A condition presents an
unreasonable risk of harm if there exists a sufficient probability of a harmful event occurring that a reasonably prudent
person would have foreseen it or some similar event as likely to happen. Seideneck v. Cal Bayreuther Assoc., 451 S.W.2d
752, 754 (Texas 1970). We hold that Grieve produced evidence sufficient to defeat summary judgment on this element as
well.

Bigham stated that the step was light grey, similar to the sidewalk. In contrast to the visibility of the ramps used in the area,
this step would be difficult to see if the invitee, such as appellant, was unfamiliar with the area. There was no warning or
marking on the step to distinguish it from the sidewalk. In addition, Bigham testified that the walking area was uneven and
usually wet due to standing water from the air conditioner. We conclude that reasonable minds could differ as to whether
this step posed an unreasonable risk of harm.

Next we turn to the question of whether Grieve produced any evidence that Red Roof failed to exercise reasonable care to
reduce or eliminate the risk. Again, we believe that the testimony from Red Roof's manager amounts to some evidence on
this issue. Additionally, Grieve's expert, Jack Tollett, testified about ways that Red Roof could have made the step safer.
He testified that they could have merely painted the step a contrasting color for minimal cost and thereby eliminated much
of the risk. The question of whether Red Roof's actions were reasonable in light of the nature of the risk created by the step
and the ease with which it could be remedied is left soundly to the discretion of the jury. However, the inferences created
by Grieve's evidence are sufficient to survive summary judgment. Accordingly, we hold the trial court erred in granting
no-evidence summary judgment in favor of Red Roof. (2)

 Moreover, the same evidence that prevents the trial court from entering a no-evidence summary judgment against Grieve
prevents it from correctly entering a traditional summary judgment against Grieve. Accordingly, we hold the trial court
erred in granting summary judgment in favor of Red Roof. We reverse the trial court's grant of summary judgment and
remand this cause to the trial court for further proceedings consistent with this opinion. 





______________________________

J. BONNER DORSEY,

Justice



Do not publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 31st day of August, 2001. 

1. We need not address the question of whether the alleged building code violation will support a cause of action for
negligence per se because we hold that, at a minimum, the evidence that the Red Roof structure violated the building code
supports an inference that Red Roof should have known of a potentially dangerous condition sufficient to create a fact
question regarding whether Red Roof had constructive knowledge of the condition. Cf. Nixon v. Mr. Property
Management Co., Inc., 690 S.W.2d 546, 549 (Tex. 1985) (violation of a statute or ordinance can create negligence per
se);McDaniel v. Continental Apartments Joint Venture, 887 S.W.2d 167, 172 (Tex. App.--Dallas 1994, writ denied)
(violation of a city ordinance relates only to the third element of the premises defect cause of action--i.e., that the
owner/occupier of the premises did not exercise reasonable care in reducing or eliminating a known dangerous condition on
the property).

2. Red Roof did not argue to the trial court that Grieve failed to produce any evidence regarding the final element of her
cause of action, that Red Roof's failure to use reasonable care proximately caused Grieve's injuries. Thus, summary
judgment could not have been entered on that basis.