**HOU–TEX, INC., Appellant,**

v.

**LANDMARK GRAPHICS, Appellee.**

No. 14–98–00620–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

July 13, 2000.

R. Tate Young, Michael Steven Burg, Houston, for appellants.

Brian F. Antweil, Sue D. Rosenthal, Houston, for appellees.

Panel consists of Justices SEARS, DRAUGHN, and EVANS.*

* Senior Justices Ross A. Sears, Joe L. Draughn,

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This is an appeal from a summary judgment awarded to Landmark Graphics, the owner and licensor of a software program called SeisVision. Appellee Hou–Tex, Inc. is an oil and gas company who drilled a dry hole after its geological contractor helped choose the drilling site by using the SeisVision software. Hou–Tex appeals in seven points of error, contending that (1) Landmark Graphics owed it a legal duty; (2) the geological contractor learned about a "bug" in SeisVision only after the dry well had been drilled and abandoned; (3) a fact issue exists about Landmark's disclaimers and their applicability to Hou–Tex's warranty claims; (4) an "as is" clause in the software license is inapplicable to Hou–Tex; (5) the "as is" clause is an invalid waiver and disclaimer under the Texas Deceptive Trade Practices Act; and (6) and (7) a summary judgment affidavit was inadmissible as evidence.

We affirm the trial court's judgment because: (1) the economic loss rule precludes Hou–Tex's negligence claims against Landmark; (2) we need not address when the geological contractor learned about the software's bug; (3) Hou–Tex is not a party in horizontal privity who can sue for breach of implied warranties; (4) Landmark's disclaimers, which include an "as is" clause, bar Hou–Tex's claim for breach of express warranty; (5) the DTPA is inapplicable because Landmark's alleged deceptive act did not occur in connection with Hou–Tex's transaction for services; and (6) and (7) the pertinent portion of an affidavit to which Hou–Tex objected is not conclusory and Hou–Tex's remaining objections about admissibility of evidence have been waived.

## BACKGROUND

Hou–Tex signed an oil, gas, and mineral lease to develop a prospective oil and gas field under land owned by the Angerstein

Frank G. Evans sitting by assignment.

family in Victoria County, Texas. To help choose the best site for an oil well on the land, Hou–Tex hired a geological contractor named Saguaro Seismic Surveys, L.C. Saguaro conducted a geophysical survey and interpreted its seismic data with a computer software program called SeisVision[1] to help choose the best location for the oil well. SeisVision helped to select a site called Angerstein No. 1, and drilling started on January 16, 1996. Angerstein No. 1 was a dry hole.

The well was 1,150 feet east and 650 feet north of the site where it should have been drilled. This deviation was the result of a defect in SeisVision, a "bug" in computer parlance, that miscalculated data from plots of land with irregular boundaries. In March 1996, Saguaro reported this bug to SeisVision's developer at Landmark. The developer told Saguaro that Landmark had known about the bug since August 1995. Landmark had corrected the problem in an updated version of SeisVision, which it had sent to only some of its clients. Neither Saguaro nor its consultant, Anasazi, had been told about the bug or sent the updated version.

Hou–Tex filed suit against Landmark for the costs of drilling Angerstein No. 1, alleging that Landmark (1) was negligent, (2) breached implied and express warranties; (3) negligently misrepresented SeisVision's abilities; and (4) violated the Deceptive Trade Practices Act. Landmark filed for summary judgment, arguing that it (1) owed no duty to Hou–Tex; (2) was not the proximate cause of Hou–Tex's damages; (3) expressly disclaimed all warranties; (4) made no representations to Hou–Tex; and (5) could not be sued under the DTPA because it was not connected to the services provided by Saguaro. The trial court granted Landmark a general summary judgment.

## STANDARD OF REVIEW

■ The standard of review for a summary judgment is well established. The movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549–49 (Tex.1985). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See id.* Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

■ A defendant is entitled to summary judgment if the evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995). To accomplish this, the defendant must present summary judgment evidence that negates an element of the plaintiff's claim. If this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that raises a fact issue with regard to the element challenged by the defendant. *See id.*

## ECONOMIC LOSS RULE

■ In its first point of error, Hou–Tex contends that summary judgment on its negligence claims was error because Landmark owed it a duty (1) to inform Saguaro about the bug in SeisVision and (2) to ensure that SeisVision worked correctly. Landmark responds that it owed no duty in tort to Hou–Tex and that Hou–Tex's claims sound in contract. Hou–Tex denies that its claims sound in contract, arguing instead that every manufacturer owes a duty to third party beneficiaries/users of

---

1. Saguaro either used a beta, or test, version of SeisVision or a commercial version licensed to Anasazi Explorations, a consultant company hired by Saguaro to provide software support.

its products.[2] *See Feldman v. Kohler Co.*, 918 S.W.2d 615 (Tex.App.-El Paso 1996, writ denied). In the context of defective computer software, this is an issue of first impression for this Court. Nonetheless, the existence of a duty is a question of law for a court to decide from the facts surrounding the occurrence in question. *See Mitchell v. Missouri–Kansas–Texas R.R.*, 786 S.W.2d 659, 662 (Tex.1990).

 In this case, the fact of most import is that Hou–Tex suffered only economic damages for its costs of drilling a dry well. Given this fact, we hold that the economic loss rule precludes any duty in tort by Landmark to Hou–Tex. *See Indelco, Inc. v. Hanson Indus. N. Am.-Grove Worldwide*, 967 S.W.2d 931, 933 (Tex.App.-Houston [14 th Dist.] 1998, pet. denied). Under the economic loss rule, economic damages are not recoverable unless they are accompanied by actual physical harm to persons or their property. The Texas Supreme Court first enunciated this rule in the context of strict products liability claims. *See Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 79 (Tex.1977); *see also Harris Packaging Corp. v. Baker Concrete Construction Co.*, 982 S.W.2d 62, 65 (Tex.App.-Houston [1 st Dist.] 1998, pet. denied).

The Texas Supreme Court has not addressed whether the economic loss rule precludes a third party's negligence claim for economic loss. However, the Fifth Circuit Court of Appeals, in analyzing Texas law, has addressed the issue. *See Hininger v. Case Corp.*, 23 F.3d 124, 125 (5 th Cir.1994) (where product purchaser sued remote component part manufacturer for product defect and economic loss). The *Hininger* court disallowed the plaintiff's negligence claim, reasoning that:

> Implicit in the [economic loss rule] is the policy judgment that in a commercial context the possibility of an inadequate recovery ... does not justify permitting a tort recovery that will allow a purchaser to reach back up the production and distribution chain, thereby disrupting the risk allocations that have been worked out in the transactions comprising that chain.

*Id.* at 127 (quoting *King v. Hilton–Davis*, 855 F.2d 1047 (3d Cir.1988)). We agree. Permitting Hou–Tex to sue Landmark for economic losses would disrupt the risk allocations that Hou–Tex worked out in its contract with Saguaro and the risk allocations in Landmark's beta agreement or licensee agreement with SeisVision's licensees. Because the economic loss rule precludes Hou–Tex's negligence action, we overrule point of error one.[3]

## KNOWLEDGE ABOUT THE SOFTWARE DEFECT

In its second point of error, Hou–Tex claims that the trial court erred in granting summary judgment because Saguaro learned about the defect in the software after drilling began on the oil well. However, this point of error was argued in conjunction with Hou–Tex's negligence claim against Landmark. As we have held such a claim is precluded, we need not address this point.

---

2. We accept that the SeisVision software is a product for purposes of this appeal because, as shown by the undisputed summary judgment evidence, it is a highly technical tool used to create a graphic representation from technical data. *See Winter v. G.P. Putnam's Sons*, 938 F.2d 1033 (9 th Cir.1991) (contrasting charts that graphically depict geographic features and "How To" books). We do not imply that all software programs are products for purposes of products liability.

3. Our holding is consistent with authority on computer law about manufacturers' liability: "The end-user's right to seek recovery from the manufacturer ... of a product ... when the user does not directly deal with the manufacturer ... often hinges on product liability concepts. In most states, however, product liability claims are not available for pure economic loss.... In cases of economic loss, the primary avenue of recovery must flow through contract law theory." *See* RAYMOND NIMMER, THE LAW OF COMPUTER TECHNOLOGY para. 6.22 (1997).

## WARRANTY CLAIMS

In its third point of error, Hou–Tex argues that there is a fact issue about Landmark's disclaimers and whether they are effective against Hou–Tex. In its fourth point of error, it contends that Landmark's "as is" clauses do not vitiate breach of warranty claims by third parties. Landmark responds that (1) Hou–Tex cannot sue for breach of implied warranty and that (2) its disclaimers are effective against all parties.

We first address Landmark's counter-argument that Hou–Tex cannot sue for breach of implied warranty. We then address Hou–Tex's contention about Landmark's disclaimers under the applicable provisions of the Uniform Commercial Code (UCC), which governs warranties for the sale of goods.[4] *See* TEX. BUS. & COM. CODE ANN. §§ 2.313—2.315 (Vernon 1994).

### A. Privity and Implied Warranties

Landmark first contends that because its relationship to Hou–Tex is too attenuated, the law precludes Hou–Tex's claim for breach of implied warranty. *See Hining-*

*er,* 23 F.3d at 128–29. Landmark argues that there is no direct contractual relationship between it and Hou–Tex. Hou–Tex was never the buyer, end-user, or possessor of the SeisVision software. Instead, Hou–Tex contracted with Saguaro for the latter's services, a contract in which Saguaro disclaimed its own liability. Further, Saguaro bought the use of SeisVision either through a beta contract with Landmark that contained disclaimers or through another party who was a licensee of Landmark and thus also under disclaimer. Hou–Tex seeks to avoid all the disclaimers by not imposing liability on Saguaro, with whom it contracted,[5] but to leap-frog over Saguaro to impose liability on Landmark, with whom it had no relationship whatsoever.

■ Two preeminent Texas Supreme Court cases have addressed who may sue for breach of implied warranty other than the immediate purchaser of a product.[6] First, in *Nobility Homes of Texas, Inc. v. Shivers,* the court decided that parties in vertical privity[7] may sue under breach of implied warranty for economic loss. *See*

---

**4.** In the trial court, Hou–Tex initially argued that the UCC was only applicable to sales of goods, not licenses of software. It has not raised this issue on appeal. We note that at least one court and several academic commentators have concluded, when addressing the issue, that software is a "good" within the definition of the UCC. *See Advent Systems Ltd. v. Unisys Corp.,* 925 F.2d 670, 675–76 (3d Cir.1991).

**5.** Hou–Tex sued Saguaro, but never served it, and nonsuited it after Landmark won summary judgment.

**6.** In most states, section 2.318 of the UCC determines whether third parties may sue for breach of implied warranty. These states have adopted one of three alternatives of section 2.318 suggested by the UCC editorial board that extend the seller's warranty to persons other than the immediate purchaser. *See Garcia v. Texas Instruments,* 610 S.W.2d 456, 464 (Tex.1980). Alternative A extends a seller's warranty to household members or guests of the purchaser who have been personally injured. *See id.* Alternative B broadens the class of persons who may sue to "any

natural person," but retains the personal injury requirement. *See id.* Alternative C extends a seller's warranties to "any person who may reasonably be expected to use, consume, or be affected by the goods" and deletes the personal injury requirement. *See id.*

Texas's legislature chose none of these alternatives and created a unique version of section 2.318. Entitled "Chapter Neutral on Question of Third Party Beneficiaries of Warranties of Quality and on Need for Privity of Contract," Texas's section 2.318 reads:

> This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of goods. These matters are left to the courts for their determination.

**7.** Vertical privity "includes all parties in the distribution chain from the initial supplier of the product to the ultimate purchaser." *Garcia,* 610 S.W.2d at 463.

557 S.W.2d at 81 (owners of mobile home could sue manufacturer of home although owners did not purchase it directly from manufacturer). Second, in *Garcia v. Texas Instruments, Inc.*, the court determined that parties in horizontal privity [8] may sue under breach of implied warranty for personal injury. *See* 610 S.W.2d at 465 (allowing employee of buyer of sulfuric acid to sue seller for his acid burns). Thus, Texas courts have never permitted all persons who may have been affected by goods to sue for breach of implied warranty.

Because Hou–Tex is not in vertical privity nor is it suing for physical injury, its implied warranty claims differ from the plaintiffs' claims in *Nobility Homes* and *Garcia.* We can find no Texas cases, and Hou–Tex directs us to none, where a party in horizontal privity has been permitted to sue a seller for economic damages. However, at least one federal case, in interpreting Texas law, has held that "Texas will not extend horizontal privity to economic loss cases...." *Keith v. Stoelting,* 915 F.2d 996, 999 (5th Cir.1990) (where state employee sued polygraph manufacturer after he failed a polygraph test and lost his job). In disallowing the employee's claim for breach of implied warranty, the federal appeals court noted that "Texas courts have urged the exercise of caution in making further extensions of the privity requirements." *Id.* (citing *Merit Drilling Co. v. Honish,* 715 S.W.2d 87, 93 (Tex. App.-Corpus Christi 1986, writ ref'd n.r.e)).

■ We agree that we must exercise caution in making further extensions of the requirement of privity between the plaintiff and the product seller in breach of implied warranty claims. We must also be cautious in creating a rule that disallows claims not at issue in this case. Accordingly, we do *not* today hold that all parties in horizontal privity with the seller are disallowed from suing for economic loss caused by breach of implied warranty. However, a buyer's customer, who has not purchased the use of the product, is not among those in horizontal privity who can sue for economic loss caused by the seller's breach of implied warranty. Accordingly, we hold that Hou–Tex cannot maintain an action against Landmark for breach of implied warranty, and we affirm the trial court's summary judgment on Hou–Tex's implied warranty claims.

## B. Express Warranty

Next, we address Hou–Tex's third and fourth points of error regarding its remaining claims for breach of express warranty. As previously stated, Hou–Tex contends that there is a fact issue about Landmark's disclaimers and whether the disclaimers and "as is" clauses are effective against Hou–Tex. Landmark argues that its disclaimers and "as is" agreements bar Hou–Tex's claim for breach of express warranty.

The uncontroverted summary judgment evidence shows that Saguaro received a beta version of SeisVision under a Nondisclosure Agreement. This agreement included the following disclaimer:

7. Disclaimer of Warranty: Tester understands and acknowledges that the Software is a test product and its accuracy and reliability are not guaranteed. Owing to its experimental nature, Tester is advised not to rely exclusively on the Software for any reason. Tester waives any and all claims it may have against the Company arising out of the performance or nonperformance of the Software.

THE SOFTWARE IS PROVIDED AS IS AND THE COMPANY DISCLAIMS ANY AND ALL REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO IT, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTA-

---

**8.** Horizontal privity "describes the relationship between the original supplier and a non-purchasing party who is affected by the product." *Garcia,* 610 S.W.2d at 463–64.

BILITY OR FITNESS FOR A PAR-
TICULAR PURPOSE.

The uncontroverted summary judgment evidence also reveals that the license for the commercial version of SeisVision contained the following disclaimer:

5. **Disclaimer of Warranty:** It is your responsibility to choose, maintain, and match the hardware and software components of your computer. Thus [Landmark] does not guarantee uninterrupted service, and this software is licensed on an "AS IS" basis.

THE SOFTWARE IS PROVIDED AS IS, AND [LANDMARK] DISCLAIMS ANY AND ALL REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, WITH RESPECT TO IT, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

 "Liability in warranty arises where damage is caused by the failure of a product to measure up to the seller's express or implied representations." *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.,* 572 S.W.2d 308, 313 (Tex.1978). The UCC "allows manufacturers to restrict their liability by the exclusion or modification of both implied and express warranties." *Nobility Homes,* 557 S.W.2d at 82; *see* TEX. BUS. & COM.CODE ANN. § 2.316(a). A litigant's ability to recover for breach of warranties turns on whether the seller eliminated the warranties applicable to the product's quality and performance with an "as is" disclaimer. *See Mid Continent,* 572 S.W.2d at 313. Further, in an "as is" agreement such as those at issue here, a "seller gives no assurances, express or implied, concerning the value or condition of the thing sold." *Prudential Ins. Co. of Am. v. Jefferson Assoc., Ltd.,* 896 S.W.2d 156, 161 (Tex. 1995).

 Hou–Tex, citing *Jefferson Associates,* argues that an "as is" agreement does not always preclude a claim for breach of express warranties. *Id.* at 162. It argues that "[t]he nature of the transaction and the totality of the circumstances surrounding the agreement must be considered." *Id.* Hou–Tex thus argues that Landmark's "as is" agreements should be inapplicable because (1) it did not engage in an arms-length transaction with Landmark and (2) it, as an "indirect user" of the software, did not agree to take the full risk of determining the value of the software.

We acknowledge that mere use of the two words "as is" has never been held to automatically bar an action on an express warranty. *See Jefferson Assoc.,* 896 S.W.2d at 166 (Cornyn, J., concurring). However, in considering the nature of the transaction and the totality of the circumstances surrounding Landmark's agreements with its licensees, we are unpersuaded by Hou–Tex's argument. Hou–Tex uses its remoteness from the original sales transaction as both a sword and a shield: it asserts its ability to sue, but uses its distance from the sales transaction to deny Landmark its UCC protections. Hou–Tex cannot have it both ways. If a third party can sue a seller for breach of express warranty, as we must assume for this appeal, the seller's disclaimers of warranties apply to the third party. *Cf. Nobility Homes,* 557 S.W.2d at 82 (manufacturer's ability to exclude warranties protects it from unlimited and unforeseeable liability); *see generally* Peter A. Alces, *W(h)ither Warranty: The B(l)oom of Products Liability Theory in Cases of Deficient Software Design,* 87 CAL. L.REV. 269, 279 (1999) (noting that warranties are not "monolithic"; parties remain free under the UCC to disclaim them). In this case, Landmark's disclaimers go beyond the mere words "as is" and "disclaim[ ] any and all representations or warranties of any kind, whether express or implied." Because we find nothing in the nature of the transaction or totality of the circumstances to prevent application of these dis-

claimers to Hou–Tex, we overrule points of error three and four.

## DECEPTIVE TRADE PRACTICES ACT

In point of error five, Hou–Tex contends that the trial court erred in granting summary judgment on its DTPA claim. Specifically, Hou–Tex argues that Landmark's disclaimers do not comply with section 17.42 of the DTPA to constitute a valid waiver and disclaimer of the act's protections. *See* TEX. BUS. & COM.CODE ANN. § 17.42. Landmark replies that it is not liable under the DTPA because the DTPA does not impose derivative liability on a defendant based on an innocent involvement in a business transaction.

 The purpose of the DTPA is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." TEX. BUS. & COM.CODE ANN. § 17.44. A consumer suing under the DTPA need not establish contractual privity of contract with the defendant. *See Home Sav. Ass'n v. Guerra,* 733 S.W.2d 134, 136 (Tex. 1987). However, the DTPA is not without limitation, and liability will not be imposed merely because a defendant introduced a particular product into the stream of commerce. *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 650 (Tex.1996). The DTPA is not intended to reach upstream manufacturers when their misrepresentations are not communicated to the consumer. *See id.* at 649.

 Hou–Tex argues that deceptive conduct may nonetheless be actionable under the DTPA if it is "inextricably intertwined" with a consumer transaction, citing *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex. 1982). *Knight* is distinguishable from this case. In *Knight,* there was one transaction -the sale of a truck on an installment basis- and two defendants who worked to-

gether to make the transaction. *See id.* Here, Landmark did not work with Saguaro to secure Hou–Tex's purchase of geological services. Further, the Texas Supreme Court has since cautioned that "inextricably intertwined" is not an additional theory of vicarious liability under the DTPA. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 305 (Tex.1988). Instead, for DTPA liability, the defendant's deceptive conduct must occur in connection with the consumer's transaction in goods or services. *See Amstadt,* 919 S.W.2d at 649–50.

Thus, we search the summary judgment record for evidence of Landmark's deceptive conduct and for evidence that such deceptive conduct occurred in connection with Hou–Tex's transaction with Saguaro for its services. The evidence shows that in 1994, Saguaro was a beta tester of the newly developed SeisVision software. By February 1995, Saguaro had in its possession a licensed version of the software, which was operated by and may have been licensed to Saguaro's consultant, a company called Anasazi Explorations. In July 1995, Saguaro contracted with Hou–Tex to provide it geophysical and geographical expertise. Apparently throughout this time, Saguaro's consultant, Anasazi, was in weekly telephone contact with the software developer. Landmark was thus aware that Anasazi was using the software in its work for Saguaro's customers. During these telephone conversations, Landmark's employee and Anasazi's principal discussed limitations of and bugs in the software. At no time did Landmark tell Anasazi, or Saguaro, about the particular bug that plagued the Angerstein No. 1 well. When Anasazi informed Landmark about this bug after Hou–Tex drilled the dry well in January 1996, Landmark's employee told them that he had learned about the bug in August 1995 from another user. He had even corrected the bug and sent an updated version of the software to some clients.

Even if we construe this evidence as a deceptive act on the part of Landmark,

there must still be evidence that someone communicated the deception to Hou–Tex in connection with its acquisition of Saguaro's services. Landmark's summary judgment evidence shows that it had no communication with Hou–Tex and made no representations to it. Having established this, the burden shifts to Hou–Tex to offer controverting evidence that creates a fact issue. *See Centeq Realty*, 899 S.W.2d at 197. Although Hou–Tex argues that Landmark's misrepresentations were communicated by Saguaro, it provides no supporting evidence. There is no evidence that Hou–Tex even knew about the software until after it failed. Accordingly, there is no fact issue that Landmark's conduct was not communicated to Hou–Tex in connection with Hou–Tex's transaction for services from Saguaro. Consequently, Landmark's conduct cannot support DTPA liability, and we overrule point of error five.

## EVIDENTIARY OBJECTIONS

In points of error six and seven, Hou–Tex contends that the trial court erred in admitting portions of an affidavit that were hearsay, speculative, without foundation, and conclusory.

To be considered by the trial or reviewing court, summary judgment evidence must be presented in a form that would be admissible at trial. *See Hidalgo v. Surety Sav. & Loan Assoc.*, 462 S.W.2d 540, 545 (Tex.1971). A party must object in writing to the form of summary judgment evidence and place the objections before the trial court, or its objections will be waived. *See Grand Prairie I.S.D. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990). Hou–Tex objected to hearsay, speculation, and lack of foundation in the affidavit of Peter Flanagan, an employee of Landmark. These are objections to form.[9] To complain on appeal, Hou–Tex was required

not only to object to the form, but to secure a ruling on its objections by the trial court. *See Roberts v. Friendswood Development Co.*, 886 S.W.2d 363, 365 (Tex.App.-Houston [1st Dist.] 1994, writ denied). The record does not show that Hou–Tex secured any ruling on its objections to the affidavit. Therefore, Hou–Tex has waived any complaint on appeal.

Hou–Tex's remaining objection to the affidavit of Peter Flanagan is that it contained conclusory statements. "An objection that an affidavit states only a legal conclusion is one that relates to a defect in substance." *Rizkallah*, 952 S.W.2d at 587. Thus, it may be raised for the first time on appeal. *See id.* Only one of Hou–Tex's conclusory objections has bearing on our review of the summary judgment evidence for this appeal. The others, even if granted, would not raise a fact issue on any of Hou–Tex's causes of action. Thus, we review only the one objection.

The sentence in Peter Flanagan's affidavit to which Hou–Tex objects states, "Landmark Graphics provided no good or service to Hou–Tex, nor did it make any representation [to] or have any communication with Hou–Tex concerning the software." We disagree that this sentence states a legal conclusion. "A conclusory statement is one that does not provide the underlying facts to support the conclusion." *Rizkallah*, 952 S.W.2d at 587. Here, however, the sentence is a short rendition of the fact that Landmark had no communication with Hou–Tex whatsoever. Additionally, even if the portion "provided no good or service to Hou–Tex" is conclusory, other summary judgment evidence, including the contract between Saguaro and Hou–Tex, affidavits of Saguaro employees, and a letter from Saguaro to Landmark, show that Saguaro, not Landmark, provided services to Hou–Tex.

9. "Hearsay in an affidavit is a defect in form." *Wilson v. General Motors Acceptance Corp.*, 897 S.W.2d 818, 822 (Tex.App.-Houston [1st Dist.] 1994, no writ). Whether an affiant has personal knowledge and is competent are objections to form. *See Rizkallah v. Conner*, 952 S.W.2d 580, 584–86 (Tex.App.-Houston [1st Dist.] 1997, no writ).

Because we find that the pertinent sentence in Peter Flanagan's affidavit is not conclusory and that Hou–Tex waived review of its other objections, we overrule points of error six and seven.

We affirm the judgment of the trial court.