Affirmed in Part; Reversed and Remanded in Part; and Opinion filed
December 19, 2006








Affirmed in Part; Reversed and Remanded in Part; and Opinion filed December 19,
2006.




 
 
  
 
 




 

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-04-01109-CV

_______________

 

ZENON H. PICO AND PAULA PICO, Individually and as
Parents of JOSE ANTONIO PICO, Deceased, ESPERANZA MORENO, as Next Friend of
TATIANA PICO, a Minor and Heir to the Estate of JOSE ANTONIO PICO, Deceased,
and The Estate of JOSE ANTONIO PICO, Deceased, Appellants

 

V.

 

CAPRICCIO ITALIAN RESTAURANT, INC., FAISAL HUSSEIN,
Individually, JACK MONTALBANO, Individually, THE JACK AND MARY MONTALBANO
TRUST, ANGELINA MONTALBANO SULGROVE TRUST, CAMILLA MONTALBANO BROTHERS TRUST,
MARY ANN MONTALBANO TURNBOW TRUST, MARGARET MONTALBANO BURKE TRUST and JO ANN
MONTALBANO PIPER TRUST, Appellees

                                                                                                                                               


On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 02‑33572

                                                                                                                                               


 

O P I N I
O N








In this
wrongful death suit based on a premises liability theory, appellants, Zenon H.
Pico and Paula Pico, Individually and as Parents of Jose Antonio Pico,
Deceased, Esperanza Moreno, as Next Friend of Tatiana Pico, a Minor and Heir to
the Estate of Jose Antonio Pico, Deceased, and The Estate of Jose Antonio Pico
(collectively Aappellants@) appeal from three separate summary judgments in favor of
(1) Capriccio Italian Restaurant, Inc. (ACapriccio@); (2) Jack Montalbano, Individually,
The Jack and Mary Montalbano Trust, Angelina Montalbano Sulgrove Trust, Camilla
Montalbano Brothers Trust, Mary Ann Montalbano Turnbow Trust, Margaret
Montalbano Burke Trust, and Jo Ann Montalbano Piper Trust (collectively Athe Montalbanos@); and (3) Faisal Hussein,
Individually,  (AHussein@).  We affirm, in part, and reverse and remand, in part, the
summary judgment in favor of Capriccio.  We affirm, in part, and reverse and
remand, in part, the summary judgment in favor of the Montalbanos.  We affirm
the summary judgment in favor of Hussein.

I.  Background

During
relevant times, the Montalbanos owned property fronting Westheimer Street in
Houston.  The Montalbanos leased a portion of the property, the premises
located at 7933 Westheimer, to Capriccio, which operated a nightclub (Athe club@).  Hussein was the president and
sole shareholder of Capriccio.  The leased premises consisted of the club
building, a driveway just east of the building, and a parking lot behind the
building.  Hullsmith Street, which runs perpendicular to Westheimer, was the
east border of the Montalbanos= property.  Between the club premises and Hullsmith was a
strip center housing several businesses, who were also tenants of the
Montalbanos, and a parking lot in front of the strip center.  To the east of
Hullsmith was a parking lot that was not owned or occupied by the Montalbanos
or Capriccio.








On the
night of May 4, 2001, Jose Antonio Pico (APico@), Jose Amaya, Alvaro Cifuentes, and
Yianet Lara went to the club.  They met in the parking lot east of Hullsmith
and walked to the club.  When they arrived, Pico went inside while Amaya,
Cifuentes, and Lara remained outside.  While Amaya was outside by the door, a
Cadillac with six occupants appeared in the driveway.  The driver asked Amaya, AWhat are you looking at?@  The Cadillac occupants then made
offensive statements to the driver of the car in front of them.  After the
front car moved, the Cadillac continued to the parking lot at the back of the
club.  Amaya called Pico and asked him to come out because Amaya, Cifuentes,
and Lara planned to leave and Lara=s handbag was in Pico=s car.

The
group arrived at Pico=s car in the parking lot east of Hullsmith.  Then, a friend
named David Barrerra arrived at the club, parked in front of the entrance, and
began walking towards them.  At some point, the Cadillac appeared and struck
Barrera, and one or more of the occupants got out of the car and tried to
physically hit Barrera.  After Pico went to Barrera=s aid, the Cadillac occupants beat
Pico for about twenty minutes.  They eventually let Pico go, but one of the
Cadillac passengers subsequently struck him again four times with a baseball
bat.  As we will discuss, the location of the assault on Pico is disputed and
is central to the motions for summary judgment.  In any event, Pico died four
days later from his injuries.

Appellants,
who are Pico=s parents, the mother of his minor child, and his estate, filed a
wrongful death suit against appellees based on a premises liability theory.
Appellants alleged that all appellees were negligent by failing to take
reasonable measures to ensure Pico=s safety as a business invitee. 
Appellants also sought punitive damages, claiming appellees= actions constituted gross negligence
and/or intentional acts.








Capriccio
and Hussein jointly filed a traditional motion for summary judgment.  The
Montalbanos also filed a traditional motion for summary judgment.  In essence,
both motions were based on the contention that appellees owed no duty to
protect Pico from the criminal acts of the Cadillac occupants because the
appellees did not control or have the right to control the premises where Pico
was assaulted.  Before the trial court ruled on the traditional motions,
Hussein filed his own Ano-evidence@ motion for summary judgment.  Subsequently, the trial court
signed a traditional summary judgment in favor of Capriccio, a traditional
summary judgment in favor of the Montalbanos, and a Ano-evidence@ summary judgment in favor of
Hussein.  Appellants appeal from all three orders.

II.  The Issues and Standard of Review 

Appellants
present two issues on appeal: (1) the trial court erred by granting summary
judgment on behalf of the AAppellees/Defendants@ because there are genuine issues of
material fact regarding the location of the assault; and (2) the trial court
erred by granting a no-evidence summary judgment.  We construe appellants= first issue as a challenge to the
traditional summary judgments in favor of Capriccio and the Montalbanos and
their second issue as a challenge to the no-evidence summary judgment in favor
of Hussein.  

The
movant for a traditional summary judgment must show there are no genuine issues
of material fact and it is entitled to judgment as a matter of law.  Tex. R. Civ. P.  166a(c); Western
Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005).  A defendant, as
movant, is entitled to summary judgment if it (1) disproves at least one
element of the plaintiff=s theory of recovery; or (2) pleads and conclusively
establishes each essential element of an affirmative defense, thereby rebutting
the plaintiff=s cause of action.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420,
425 (Tex. 1997).

A party
may move for summary judgment on the ground there is no evidence of one or more
essential elements of a claim or defense on which an adverse party would have
the burden of proof at trial.  Tex. R.
Civ. P. 166a(i); Urena, 162 S.W.3d at 550.  The court must grant
the motion unless the respondent produces summary judgment evidence raising a
genuine issue of material fact on those elements.  Tex. R. Civ. P. 166a(i); Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006); Urena, 162 S.W.3d at 550.








When a
trial court=s order does not specify the grounds relied upon in granting summary
judgment, we must affirm the summary judgment if any of the grounds presented
are meritorious.  See Urena, 162 S.W.3d at 550.  In reviewing a summary
judgment, we take as true all evidence favorable to the nonmovant, and indulge
every reasonable inference and resolve any doubts in favor of the nonmovant.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Although
appellants make one argument addressing all three summary judgments, we will
address each one separately.

III.  Traditional Summary Judgment in Favor of Capriccio

Capriccio
filed a traditional motion for summary judgment on appellants= negligence cause of action and claim
for punitive damages.

A.        Negligence Cause of Action








Capriccio
moved for summary judgment on appellants= negligence cause of action on the
sole ground that it owed no duty to protect Pico from the criminal acts of the
Cadillac occupants because Capriccio did not control or have the right to
control the premises where Pico was assaulted.[1] 
Because a premises liability case is grounded in negligence, the threshold
inquiry is whether the defendant owes a legal duty to the plaintiff.  See
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 196B97 (Tex. 1995).  In general, a person
has no legal duty to protect another from the criminal acts of third persons.  Timberwalk
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998); Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  However, A>[o]ne who controls . . . premises
does have a duty to use ordinary care to protect invitees from criminal acts of
third parties if he knows or has reason to know of an unreasonable and
foreseeable risk of harm to the invitee.=@  Timberwalk, 972 S.W.2d at
756 (quoting Lefmark Mgmt. v. Old, 946 S.W.2d 52, 53 (Tex. 1997)). 
Whether a duty exists is a question of law for the court to decide from the
facts surrounding the occurrence at issue.  Centeq, 899 S.W.2d at 197.

Capriccio
specifically asserted in its motion that Pico was assaulted on HullsmithCa public street and/or in the parking
lot east of Hullsmith, and it did not control or have a right to control either
location.[2]  Capriccio
suggested the initial confrontation between Pico=s friends and the Cadillac occupants
in front of the club did not impose a duty on Capriccio to protect Pico from
subsequent criminal conduct occurring on premises it did not control or have a
right to control.  See Gonzalez v. South Dallas Club, 951 S.W.2d
72, 73B76 (Tex. App.CCorpus Christi 1997, no writ)
(holding altercation at defendant=s night club between plaintiff=s group of friends and another group
did not impose duty on defendant to protect plaintiff from vehicular assault by
member of the other group occurring minutes after she left the club in public
intersection that defendant did not control or have right to control).  In
contrast, appellants contend there is a genuine issue of material fact relative
to the location of the assault.  We agree.  We conclude that Capriccio=s summary judgment evidence did not
conclusively demonstrate the entire assault occurred in the street and/or in
the parking lot east of Hullsmith.  Nonetheless, appellants presented contrary
evidence negating that the assault occurred entirely in one or both of these
locations.[3]








Capriccio=s Summary Judgment Evidence

To
support its motion for summary judgment, Capriccio attached (1) records from
the Harris County Medical Examiner=s Office, (2) excerpts from Jose
Amaya=s deposition, (3) excerpts from
Alvaro Cifuentes=s deposition, (4) and Hussein=s affidavit.

The
medical examiner=s records include a police report listing information about
the offense input via computer.  At the beginning of the report is an entry:  ALocation: Street no - 007917  Name - 
WESTHEIMER.@  Later, the report includes a supplement with a substantially similar
entry.  According to Capriccio, this report shows the assault on Pico occurred
at 7917 WestheimerCwhich undisputedly is the parking lot east of Hullsmith.  In
his affidavit, Hussein averred that neither he nor Capriccio owned or
controlled the property at 7917 Westheimer, and the property leased by Capriccio
is 7933 Westheimer.  In contrast, appellants argue that these entries merely
show where the injured Pico was found by the police.  We do not conclude that
these entries depict or describe only where Pico was found.  However, we do
agree that these imprecise entries do not establish that the entire assault
occurred in the parking lot east of Hullsmith.








Amaya=s deposition testimony is the only
evidence presented by Capriccio actually describing the assault on Pico.[4] 
Amaya testified that, after leaving the club, the group walked to the parking
lot east of Hullsmith.[5]  Then, David
Barrerra[6] arrived at
the club, parked in front of the entrance, and walked towards them.  As he
walked towards them, the individuals in the Cadillac were Acoming out, and they ran over him.@  Amaya later clarified that the
Cadillac struck Barrerra as it drove on Hullsmith.  The driver then exited the
Cadillac and tried to hit Barrera with his hands.  When asked whether this
fight occurred in the street, Amaya responded, AYes.  At the corner of that street
and the establishment,@ although his testimony attached to Capriccio=s motion did not indicate which Aestablishment@ or which corner.  Pico ran towards
the car to try to defend Barrera.  When Pico Aarrived,@ Barrera stood up and Aran towards [the club] walking.@  Then, the Cadillac occupants hit
Pico for about twenty minutes.

After
watching this incident, Amaya walked towards Pico.  One of the Cadillac
passengers got out and asked, AWhat do you want?@  Amaya said to leave his friend
alone.  Amaya retreated, but the passenger followed him holding a baseball bat
and tried unsuccessfully to strike him.  At some point, Pico was turned loose
by the Cadillac occupants, but this passenger wielding the bat subsequently
struck Pico again four times with the bat.  Amaya=s testimony is difficult to
understand, but he indicated that Pico was next to his own car, which was
parked in the lot east of Hullsmith, when he was struck with the bat.[7]

In sum,
Amaya testified that Pico was initially assaulted for twenty minutes after he
went to Barrera=s aid.  Then, after Pico retreated, he was assaulted again
with a baseball bat. Although Amaya=s testimony indicated the subsequent
assault with the bat occurred in the parking lot east of Hullsmith, Amaya=s testimony did not demonstrate where
the initial, twenty-minute assault occurred.  The most we can ascertain is that
Barrera was attacked in the street, Pico ran to defend Barrera, and the assault
on Pico began after he Aarrived@ to defend Barrera.  However, Amaya did not specify precisely
where the assault on Pico began.  Regardless, even if the assault on Pico began
in the street, Amaya=s testimony is silent regarding Pico=s location during the rest of the
twenty-minute assault.








Because
we indulge every reasonable inference and resolve any doubts in favor of
appellantsCnot Capriccio, we cannot infer that an assault lasting a full twenty
minutes was confined to the street merely because it began in the street.  It
is just as plausible the assault spilled over onto property bordering the
street, including the property west of Hullsmith where the club and the strip
center are located.  Although the location of the assault was fundamental to
Capriccio=s motion, it did not elicit testimony from Amaya to pin down the
location, or at least it did not attach any such testimony to its motion.
Accordingly, Capriccio did not conclusively demonstrate that the entire assault
occurred in the street and/or in the parking lot east of Hullsmith.

Appellants= Summary Judgment Evidence

Because
Capriccio did not conclusively demonstrate that the entire assault occurred in
the street and/or in the parking lot east of Hullsmith as claimed in its
motion, the burden never shifted to appellants to raise a genuine issue of
material fact regarding the location of the assault. See Lundstrom v. United
Servs. Auto. Ass=n.‑CIC, 192 S.W.3d 78, 84 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  Nonetheless, appellants did present contrary evidence in their
summary judgment response, particularly Barrera=s affidavit.[8]

Barrera
averred that, when he Apulled up@ to the club, he learned Pico was in the parking lot on the
east side of Hullsmith.  Barrera parked his car and walked towards Hullsmith. 
He described what happened:








Before I reached Hullsmith Street, a car full of
people pulled up and several of the occupants of the vehicle got out and began
starting trouble with me.  At the time this occurred, I was in the parking lot
between [the club] and Hullsmith Street, in front of a strip center on the west
side of Hullsmith Street.  This is an area where people who go to [the club] park. 
Other individuals got out of the car and began assaulting Mr. Pico.  I was able
to run away, but Pico was not.  The assault on me occurred in the parking lot
between Hullsmith and [the club] on the west side of Hullsmith.

Preliminarily,
we note Capriccio objected to two of Barrera=s statements that are pertinent to
our disposition and reurges these objections on appeal: (1) ABefore I reached Hullsmith Street, a
car full of people pulled up and several of the occupants of the vehicle got
out and began starting trouble with me.@  Capriccio contends this statement
is hearsay, speculative, and conclusory; and (2) AThe assault on me occurred in the
parking lot between Hullsmith and [the club] on the west side of Hullsmith.@ Capriccio contends this statement is
hearsay and conclusory.[9]

The
record does not reflect a ruling by the trial court on Capriccio=s objections.  Because the objections
to hearsay and speculation are objections to form, Capriccio waived them by
failing to obtain a ruling.  See McMahan v. Greenwood, 108 S.W.3d 467,
498 (Tex. App.CHouston [14th Dist.] 2003, pet. denied); Hou‑Tex v. Landmark
Graphics, 26 S.W.3d 103, 112 (Tex. App.CHouston [14th Dist.] 2000, no pet.). 
Conversely, because Capriccio=s objections that the statements are conclusory are
objections to substantive defects, Capriccio did not waive them by failing to
obtain a ruling and may raise them on appeal.  See McMahan, 108 S.W.3d
at 498; Hou‑Tex, 26 S.W.3d at 112.








Capriccio
claims the statements were conclusory because Barrera did not define or
describe what he meant by Athe occupants . . . began starting trouble with me@ or A[t]he assault on me occurred .
. .@  We disagree.  These statements are
not conclusions; rather, Barrera merely recited facts and described events
based on his personal knowledge.  See Hou‑Tex, 26 S.W.3d at 112
(recognizing conclusory statement is one that does not provide the underlying
facts to support the conclusion).  The more appropriate objection may have been
that these statements are vague.  However, Barrera=s statements were not conclusory
simply because he used terms that are somewhat vague to recite facts based on
his personal knowledge.  Moreover, although these terms were somewhat vague,
Amaya testified that at least the Cadillac driver got out and hit Barrera. 
Therefore, we can reasonably infer that this is the incident to which Barrera
referred.[10]

Contrary
to Amaya=s testimony that Barrera was attacked
in the street, Barrera stated he was assaulted in the parking lot in front of
the strip center west of HullsmithCbefore he reached the street.  Barrera
did not state where Pico was assaulted.  However, Amaya testified the assault
on Pico began after he Aarrived@ to help Barrera.  Because we do indulge every
reasonable inference and resolve any doubts in favor of appellants, Barrera=s affidavit, in conjunction with
Amaya=s testimony, was some evidence a
portion of the assault on Pico occurred in the parking lot in front of the
strip center west of Hullsmith.  Although Barrera did not indicate where the
entire assault on Pico occurred, he at least controverted Capriccio=s claim that the entire assault
occurred in the street and/or the parking lot east of Hullsmith.  Consequently,
Capriccio failed to conclusively prove the assault occurred on premises it did
not control or have a right to control.  Accordingly, the trial court erred by
granting summary judgment in Capriccio=s favor on appellants= negligence claim on the sole ground
raised in its motion.[11]

B.        Claim for
Punitive Damages








Capriccio
moved for summary judgment on appellants= claim for punitive damages on two
grounds: (1) punitive damages are precluded by section 41.005 of the Texas
Civil Practices and Remedies Code; see Tex.
Civ. Prac. & Rem. Code Ann. ' 41.005(a), (b) (Vernon 1997)
(providing, AIn an action arising from harm resulting from an assault, theft, or other
criminal act, a court may not award exemplary damages against a defendant
because of the criminal act of another@ and setting forth certain
exceptions); and (2) parents of a deceased allegedly have no claim for punitive
damages under the wrongful death act.       On appeal, appellants do not
challenge the summary judgment on their claim for punitive damages against
Capriccio.  Thus, appellants have waived any error with respect to the summary
judgment on that claim.  See Jacobs v. Satterwhite, 65 S.W.3d
653, 655B56 (Tex. 2001) (holding court of
appeals erred in reversing summary judgment on particular claim when appellants
did not challenge summary judgment on that claim); Riston v. Doe, 161
S.W.3d 525, 527 n.4 (Tex. App.CHouston [14th Dist.] 2004, pet. denied) (refusing to consider
summary judgment on particular claim when appellant did not challenge summary
judgment on that claim).

IV.  Traditional Summary Judgment in Favor of the Montalbanos

            The
Montalbanos moved for summary judgment on appellants= negligence cause of action and claim
for punitive damages.

A.        Negligence Cause of Action 

The
Montalbanos moved for summary judgment on appellants= negligence cause of action on two
grounds: (1) they owed no duty to protect Pico from the criminal acts of the
Cadillac occupants because he was assaulted off the Montalbanos= premises; and (2) even if the
initial confrontation in front of the club triggered a duty to protect Pico
from the subsequent criminal conduct occurring off the Montalbanos= premises, they did not owe any such
duty because CapriccioCnot the MontalbanosCcontrolled or had a right to control
security on the club premises.  Thus, although the Montalbanos raised two
grounds, both depend on the proposition that Pico was assaulted off the
Montalbanos= premises.








Specifically,
the Montalbanos asserted in their motion that Pico was assaulted on HullsmithCa public street.  We conclude that
their summary judgment evidence did not conclusively demonstrate the assault
occurred entirely in the street.  Nevertheless, appellants= evidence negated that the assault
occurred entirely in the street.[12]

To
support their motion, the Montalbanos relied on the following evidence: (1)
excerpts from Amaya=s deposition; (2) excerpts from Cifuentes=s deposition; (3) and the lease. 
Only Amaya=s deposition included information relative to the location of the assault
on Pico.[13]  The
Montalbanos relied on the same pertinent excerpts of Amaya=s deposition relative to the location
of the assault that Capriccio relied on.[14] 
As we have explained, these excerpts did not show Pico was assaulted entirely
in the street.

Moreover,
in response to the Montalbanos= motion, appellants presented Barrera=s affidavit, which is some evidence
that at least a portion of the assault on Pico occurred in the parking lot in
front of the strip center west of Hullsmith.  Thus, Barrera not only
controverted the Montalbanos= claim that the assault on Pico occurred entirely in the
street, but he raised the possibility that some portion occurred on property
owed by the Montalbanos. Consequently, the Montalbanos did not conclusively
establish the assault occurred off their premises.  Accordingly, the trial
court erred by granting summary judgment in their favor on appellants= negligence claim on the two grounds
raised in their motion.[15]








B.        Claim for
Punitive Damages

The
Montalbanos moved for summary judgment on appellants= claim for punitive damages on the
same two grounds as Capriccio: (1) punitive damages are precluded by Texas
Civil Practices and Remedies Code section 41.005; and (2) parents of the
deceased allegedly have no cause of action for punitive damages under the
wrongful death act.  On appeal, appellants do not challenge the summary
judgment in favor of the Montalbanos on the punitive damages claim.  Thus, they
have waived any error with respect to the summary judgment on that claim.  See
Jacobs, 65 S.W.3d at 655B56; Riston, 161 S.W.3d at 527 n.4.

V.  No-Evidence Summary Judgment in Favor of Hussein

Hussein
filed a no-evidence motion for summary judgment on all claims against him,
asserting that appellants cannot provide any evidence on each element of their
negligence claim: duty; breach of duty; causation; and damages.  See Doe
v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995)
(setting forth elements of a negligence claim). In their stated appellate issue
challenging the no-evidence summary judgment, appellants contend they presented
evidence to support each element of their claim against Hussein.  








However,
in their response to Hussein=s no-evidence motion and in their brief, appellants failed to
argue, or point to any evidence, supporting their contention that Hussein owed
a duty to Pico.  It is undisputed that Capriccio is a corporation and Hussein
is its president and sole shareholder.  Unless alter ego is established, a
corporate officer or agent may be individually liable to others for his own
negligence within the employment context only when he owes an independent duty
of reasonable care to the injured party apart from the employer=s duty.  Leitch v. Hornsby,
935 S.W.2d 114, 117 (Tex. 1996); see Tri v. J.T.T., 162 S.W.3d
552, 562 (Tex. 2005); see also Palmer v. Wal‑Mart Stores, Inc.,
65 F. Supp. 2d 564, 567 (S.D. Tex. 1999) (applying Leitch and concluding
manager of a Wal‑Mart store could not be individually liable to customer
alleging negligence/premises liability in slip‑and‑fall case absent
allegation that manager breached an independent duty).

In their
summary judgment response and in their brief, appellants do not argue, or point
out any evidence showing, that Hussein was an alter ego of Capriccio or owed
Pico any independent duty apart from the duty allegedly owed by Capriccio to
ensure Pico=s safety.  Instead, in their response and in their one argument of their
brief addressing all the summary judgments, appellants consistently referred to
Capriccio and Hussein collectively as AThe Capriccio Appellees/Defendants,@ when arguing reasons that they
allegedly owed a duty to Pico.[16] Although a
respondent to a no-evidence motion is not required to marshal its proof, it
needs to point out in its response evidence raising a fact issue on the
challenged elements.  See Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex. 2002) (citing comment to Rule 166a(i)).  Because
appellants failed to point out evidence raising a fact issue with respect to
Hussein on the duty element, the trial court properly granted the no-evidence
summary judgment in his favor on the negligence claim.








Finally,
Hussein=s no-evidence motion did not directly
refer to appellants= claim for punitive damages.  However, he requested summary
judgment on all claims against him because there is no evidence on each element
of the negligence claim.  A party generally may not recover punitive damages
absent recovery of actual damages.  See Lions Eye Bank of Tex. v.
Perry, 56 S.W.3d 872, 878 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied) (citing Twin City Fire Ins. Co. v. Davis, 904 S.W.2d 663, 665
(Tex. 1995); Doubleday & Co., Inc. v. Rogers, 674 S.W.2d 751, 753B54 (Tex. 1984)).  Therefore, Hussein=s motion necessarily encompassed the
claim for punitive damages, and the trial court properly granted summary
judgment on that claim.  Further, appellants do not challenge the summary
judgment in favor of Hussein on their claim for punitive damages and thus have
waived any error.

VI.  Conclusion

We
sustain, in part, and overrule in part, appellants= first issue.  We reverse the summary
judgment in favor of Capriccio on appellants= negligence cause of action and
remand for further proceedings consistent with this opinion.  We affirm the
summary judgment in favor of Capriccio on appellants= claim for punitive damages.  

We
reverse the summary judgment in favor of the Montalbanos on appellants= negligence cause of action and
remand for further proceedings consistent with this opinion.  We affirm the
summary judgment in favor of the Montalbanos on appellants= claim for punitive damages.

We
overrule appellants= second issue and affirm the summary judgment in favor of
Hussein.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered and Opinion filed
December 19, 2006.

Panel consists of Justices Hudson,
Frost, and Seymore.









[1]  In the AFacts@ section of its motion, Capriccio stated that it Amove[s] for summary judgment based on [its]
affirmative defenses contained in [its] Original Answer . . . and on the fact
that [appellants] cannot prove each element of their cause of action as a
matter of law.@  Thereafter, Capriccio did not address its
affirmative defenses again, other than reciting the standard applicable to a motion
for summary judgment based on affirmative defenses.  The argument that followed
was directed solely to Capriccio=s
contention that it owed no duty to Pico.  Therefore, we conclude the single
statement in the AFacts@ section
regarding the affirmative defenses, without more, is not an express statement
of a summary judgment ground.   See
Tex. R. Civ. P. 166a(c) (providing that motion for summary judgment Ashall state the specific grounds therefor@); Murphy v. McDaniel, No. 05‑01‑00516‑CV,
2002 WL 980850, at *4 (Tex. App.CDallas
May 14, 2002, pet. denied) (not designated for publication) (holding defendant=s merely stating elements of plaintiff=s statutory-fraud claim and asserting entitlement to
summary judgment was not a statement of a summary judgment ground).  In fact,
on appeal, Capriccio characterizes its no-duty argument as its only summary
judgment ground on the negligence claim.  Thus, we will consider this ground
only.





[2]  In the AFacts@ section of its motion, Capriccio specifically
asserted the assault occurred at 7917 WestheimerCthe parking lot east of Hullsmith.  However, in the Aargument@
portion of the motion, Capriccio asserted Pico was Ainjured@ on
a public street.  In its brief, Capriccio suggests the assault occurred both in
the street and in the parking lot east of Hullsmith.  In any event, Capriccio
asserted in its motion that it did not control or have a right to control
either location.





[3]  Although appellants= brief is not clear, they initially seem to argue that the evidence
raises a genuine issue of material fact relative to the location of the
assault.  However, they then devote considerable time to suggesting reasons
Capriccio owed Pico a duty even if the assault occurred on premises it did not
control or have a right to control.  For instance, they suggest Capriccio had a
duty to prevent the initial confrontation in front of the club from Aescalating@
into violence off the club premises.  They also allege Capriccio had an Aassumed duty@ to
protect Pico in the parking lot east of Hullsmith because Capriccio knew its
customers parked there.  Because Capriccio failed to establish the assault 
occurred on premises it did not control or have a right to control, we need not
address appellants= alternate theories.





[4]  Cifuentes=s
deposition excerpts contained no details about the assault.





[5]  Amaya actually could not recall the name of this
street, but it is undisputed they parked in the lot east of Hullsmith.





[6]  Although Amaya referred to David Barrera as ALA,@ it is
undisputed ALA@ is David
Barrera.





[7]  Specifically, Amaya testified, AAnd when he produced the bat, he swung twice at me. He
wasn=t able to hit me.  We were here like next to [Pico=s] car, because when he produced the bat I ran toward
the sidewalk to the corner.  And his friends left [Pico]. They let him loose.
They all got in the car. When the guy was not able to reach me - - catch up
with me, he walked towards where his friends were.  At that time [Pico] was at
his car, to one side of the car.  I told [Pico] to get in the car because he
was in the middle.  He hadn=t - - I hadn=t reached to where [Pico] was at that time. When he
got to where [Pico] was, he hit him many times, like four times.@





[8]  Out of appellants=
evidence, only Barrera=s affidavit contained further information relative to
the location of the assault on Pico.  Although appellants attached more
excerpts from Amaya=s deposition than were attached to Capriccio=s motion, the additional excerpts were not relative to
the location of the assault. 





[9]  Capriccio made numerous objections to appellants= summary judgment evidence.  We will address only the
above-cited objections to Barrera=s
affidavit because it was the only additional evidence presented by appellants
pertinent to the location of the assault.





[10]  Curiously, Barrera did not mention the Cadillac
striking him as described by Amaya.  However, he at least referred to the
incident in which one or more of the Cadillac occupants exited the car and hit
him.





[11]  On appeal, Capriccio also contends it owed no duty
to Pico because the risk of harm was not foreseeable, but Capriccio did not
move for summary judgment on this ground, so we will not consider it.  See
Lewis v. Nolan, 105 S.W.3d 185, 189B90
(Tex. App.CHouston [14th Dist.] 2003, pet. denied) (recognizing
we may not affirm summary judgment on a ground not raised in the motion).





[12]  As they did with Capriccio, appellants suggest the
same reasons the Montalbanos owed a duty to protect Pico even if the assault
occurred off their premises.  Because the Montalbanos did not prove the assault
occurred off their premises, we need not consider appellants= alternate theories.





[13]   In the excerpts of Cifuentes=s deposition attached to the Montalbanos= motion, he did not describe the assault on Pico.  The
Montalbanos attached the lease in an effort to show that Capriccio controlled
or had the right to control security on the club premises. 





[14]  The Montalbanos attached fewer excerpts of Amaya=s deposition to their motion than were attached to
Capriccio=s motion.  However, the Montalbanos referred to
additional excerpts not attached to their motion, but attached to Capriccio=s motion.





[15]  On appeal, the Montalbanos contend for the first
time they owed no duty to Pico even if the assault occurred on their
premises because the lease gave Capriccio control of the leased premises,
including the building, driveway, and  parking lot.  However, in their brief
and their motion, the Montalbanos did  not address the possibility, as raised
by appellants= evidence, that a portion of the assault occurred in
the parking lot of the strip center west of Hullsmith, which is property owned
by the Montalbanos and not the same parking lot that comprised part of
Capriccio=s leased premises.  Finally, the Montalbanos also
assert on appeal that they owed no duty to Pico even if the assault occurred on
their premises because the risk of harm was not foreseeable, but they did not
raise this ground in their motion, so we will not consider it.  See Lewis,
105 S.W.3d at 189B90.





[16]  In response to Hussein=s no-evidence motion, appellants incorrectly stated that Capriccio and
Hussein previously filed a no-evidence motion; thus, appellants adopted their
previous response as their response to the latest no-evidence motion.  However,
Capriccio and Hussein previously filed a traditional motion; therefore,
appellants had not previously responded to a no-evidence motion. In their
previous response, appellant argued regarding existence of a duty with respect
to Capriccio and Hussein collectively.  Therefore, by simply incorporating
their previous response into their response to Hussein=s later no-evidence motion, they failed to address
Hussein individually.