**Affirmed and Opinion filed August 29, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00557-CV

---

## GRACE INTEREST, LLC, CYPRESSWOOD LAND PARTNERS I, STEPHEN A. MORROW AND SANDRA J. MORROW, Appellants

### V.

## WALLIS STATE BANK, Appellee

---

**On Appeal from the 129th District Court
Harris County, Texas
Trial Court Cause No. 2011-20231**

---

## O P I N I O N

Appellee Wallis State Bank sued appellants Grace Interest, LLC (Grace), Cypresswood Land Partners I (Cypresswood), Stephen A. Morrow (Mr. Morrow), and Sandra J. Morrow (Mrs. Morrow), seeking to collect the deficiency remaining after the Bank foreclosed on real property securing the repayment of a promissory note. The Bank moved for summary judgment, which the trial court granted.

In this appeal, appellants contend in a single issue that the trial court erred in granting the Bank's motion for summary judgment. They make several arguments in support of this issue, including: (1) the case should have been dismissed based on the exclusive jurisdiction of the bankruptcy court; (2) the trial court did not honor appellants' right to arbitration; (3) the Bank's motion was based on inadmissible evidence; and (4) the trial court incorrectly determined that appellants had waived the Texas Anti-Deficiency Statute.[1] We conclude that this suit is permitted under the bankruptcy plan and thus does not affect the bankruptcy court's exclusive jurisdiction, that appellants did not meet their burden in seeking arbitration, that the Bank's summary judgment evidence was admissible or its consideration was harmless, and that appellants waived their rights, remedies, claims, and defenses under the Anti-Deficiency Statute. We also conclude that other arguments made by appellants have not been preserved for our review. Accordingly, we affirm the trial court's judgment.

## BACKGROUND

Cypresswood is a Texas joint venture formed to hold and develop parcels of land along State Highway 249. In 2005, Cypresswood borrowed $2,508,958 from the Bank. We consider the terms of this loan transaction and subsequent transactions in some detail because those terms show which appellants are bound by waivers of the Anti-Deficiency Statute rights, remedies, claims, and defenses.

### A. The transactions at issue

As part of the 2005 loan, Cypresswood executed a Balloon Real Estate Lien

---

[1] Sections 51.003 through 51.005 of the Texas Property Code comprise what is commonly known as the Texas Anti-Deficiency Statute. *See* Tex. Prop. Code Ann. §§ 51.003–.005 (West 2007). Section 51.003 provides that if the fair market value of a foreclosed real property is greater than the price paid for the property at the foreclosure sale, the person against whom a deficiency is sought is entitled to an offset against the deficiency equal to the amount by which the fair market value exceeds the foreclosure sale price. Tex. Prop. Code Ann. § 51.003.

Note payable on demand to the Bank (the Note). The security for payment of the Note was a 6.21-acre tract of land located in Harris County (the Property) and a $200,000 certificate of deposit. Cypresswood executed a "Deed of Trust and Security Agreement" (Deed of Trust) in favor of the Bank, which Cypresswood granted the Bank a first and senior lien and security interest in the Property. Paragraph 27 of the Deed of Trust provides:

> WAIVER OF DEFICIENCY STATUTE PROTECTIONS/FAIR MARKET VALUE FOR CALCULATING DEFICIENCIES. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code . . . , [Cypresswood] agree[s] that [the Bank] shall be entitled to seek a deficiency judgment from [Cypresswood] and any other party obligated on the Note or any guarantor of the Note equal to the difference between the amount owing on the Note and the amount for which the Premises was sold pursuant to a judicial or nonjudicial foreclosure sale. [Cypresswood] expressly recognize[s] that this section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit [Cypresswood] and other persons against whom recovery of deficiencies is sought or guarantors independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Premises as of the date of foreclosure and offset the fair market value of the Premises as of the date of foreclosure against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. [Cypresswood] further recognize[s] and agree[s] that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Premises for purposes of calculating deficiencies owed by [Cypresswood], other borrowers on the Note, guarantors, and others against whom recovery of a deficiency is sought.

To induce the Bank to make the loan, Redwood Properties, LLC, Robert Zamorano, and Mr. Morrow executed a guaranty agreement (Guaranty 1), in which they jointly and severally guaranteed the full payment of all indebtedness Cypresswood owed the Bank—including, but not limited to, all amounts owed to

the Bank under the Note.[2]  Guaranty 1 also contains a waiver by the guarantors of the provisions of the Texas Anti-Deficiency Statute.  The waiver language provides   that the Bank may seek a deficiency judgment from the guarantors, and its terms are substantively identical to those quoted above (replacing the word Cypresswood with guarantor).  Guaranty 1 expressly states that all of the guarantors remain liable for the full amount of the Note until the Note is paid in full, and it also provides that it will "automatically extend to cover all renewals, rearrangements and/or extensions of the above mentioned indebtedness and any part thereof, regardless of who may be the holder thereof and regardless of the form, terms, provisions and security (or lack of security) thereof."  Finally, Guaranty 1 contains an arbitration clause stating that "all disputes . . . shall be resolved by mandatory binding arbitration upon the request of any party."

In 2006, Cypresswood executed a Modification Agreement modifying and extending the Note.  The Modification Agreement contains an arbitration clause. Simultaneous with Cypresswood's execution of the Modification Agreement, Redwood Properties, Zamorano, and Mr. Morrow executed a second guaranty agreement (Guaranty 2) reaffirming their absolute and unconditional guarantee to pay in full all indebtedness Cypresswood owed to the Bank—including, but not limited to, all amounts due and owing the Bank under the Note.  Guaranty 2 contains a waiver of the rights, remedies, claims, and defenses under the Texas Anti-Deficiency Statute identical to the waiver in Guaranty 1.

In April 2007, Mr. Morrow filed an involuntary Chapter 11 bankruptcy petition against Cypresswood.  In January 2009, the federal bankruptcy court confirmed Cypresswood's First Amended Liquidating Plan of Reorganization, as

---

[2] Redwood Properties, LLC and Robert Zamorano were both defendants below but are not parties to this appeal.

4

modified by the Notice of Non-Material Changes to Amended Liquidating Plan (the Plan). The Plan provides:

> Class 2: Secured Claim of [the Bank]. The allowed Secured Claim of [the Bank] will be satisfied through the sale, transfer, and conveyance of [the Bank's] Collateral to [Grace]. Pursuant to Sections 1129 and 363 of the [Bankruptcy] Code, the Sale shall be free and clear of all liens, claims and encumbrances, except for the liens, claims, and interests of [the Bank], which liens shall remain in full force and effect. [Grace] shall assume all obligations owing to [the Bank], and contained in the [Bank] Loan Documents, including the obligation to repay the Allowed Secured Claim of [the Bank], in accordance with the terms and provisions of the applicable notes and deeds of trust, together with all obligations hereunder . . . .
>
> (i)    . . . [Grace] shall execute and deliver an Assumption Agreement in a form and content acceptable to [the Bank]. . . . Nothing in the Plan shall constitute a reinstatement of the [Bank] Loan, which has, and remains, matured and accelerated . . . .
>
> . . .
>
> (iii)   [Grace] shall pay $23,108.00 per month to [the Bank] . . . until November 1, 2009, at which time the full balance . . . shall be immediately due and payable. As long as [Grace] makes the required payments and complies with each and every term of this Plan and the Deeds of Trust, [the Bank] shall forbear from causing a foreclosure sale to be conducted against the [Property] until on or after November 1, 2009, after which time [the Bank] may proceed with all of its rights and remedies, including foreclosure against the [Property]. . . .

The Plan also provides that Cypresswood, as reorganized by the Plan, could "sue and be sued, including filing and defending contested matters and adversary proceedings in the [bankruptcy court] and actions or other proceedings in any other court." The Plan allows a reorganized Cypresswood to enter into binding contracts that it reasonably believes to be in its best interest. In its order confirming the Plan, the bankruptcy court specifically held that Cypresswood did not obtain a

discharge of any debt under the Plan.

The Plan required Mr. and Mrs. Morrow to execute new guaranty agreements or reaffirm their existing guaranty of the Bank loan and confirm that Grace's assumption of that loan would not impact their obligations under the guaranties. In addition, the Plan provides that the Bank expressly reserves its rights against both Mr. and Mrs. Morrow.

Pursuant to the Plan, in February 2009, the Note was assumed by Grace and modified in a Loan Assumption and Modification Agreement (Assumption Agreement) executed by Cypresswood, Grace, the Bank, and both Mr. and Mrs. Morrow. In the Assumption Agreement, Grace agreed to the following:

> 1.  Assumption of Obligations by [Grace]. [Grace] agrees to assume and does hereby assume and covenant and agree to timely pay and perform all of the payment and performance obligations of [Cypresswood] set forth in the Loan Documents in accordance with their respective terms and conditions, as modified by the terms of this Agreement. [Grace] further agrees to abide by and be bound by all of the terms of the Loan Documents, and all of the representations, warranties, covenants, agreements and acknowledgments of [Cypresswood] (to the extent not personal to [Cypresswood]) contained in the Loan Documents all as though each of the Loan Documents had been made, executed and delivered by [Grace] as of the date of this Agreement (giving credit, however, for all payments made to date under the Loan).

The Assumption Agreement defines the term "Loan Documents" as including the Deed of Trust executed by Cypresswood as well as Guaranty 1 and Guaranty 2.

Further, paragraph 4(c) of the Assumption Agreement provides:

> Loan Documents. That, the Loan Documents, as they have heretofore existed, constitute valid and legally binding obligations of [Cypresswood] and [Mr. Morrow]; that the Loan Documents, as assumed by [Grace] and [the Morrows] hereunder, constitute obligations of [Grace] and [the Morrows] and, from and after the date

6

of this Agreement, are enforceable against [Grace] and [the Morrows] (as applicable) and against the Property in accordance with their terms; and that the Borrower Parties [defined as Cypresswood, Grace, and both Mr. and Mrs. Morrow] have no defenses, setoffs, objections, claims, counterclaims, or causes of action of any kind or nature whatsoever with respect to the Loan or the Loan Documents, or the indebtedness evidenced and secured thereby.

The Assumption Agreement further provides:

7. No Impairment of Liens. Nothing set forth herein shall affect the priority or extent of the security title or lien of any of the Loan Documents, nor, except as expressly set forth herein, release or change the liability of any party who may now be or after the date of this Agreement, become liable, primarily or secondarily, under the Loan Documents. Except as expressly modified hereby, the Loan and the Loan Documents shall remain in full force and effect, and this Agreement shall have no effect on the priority or validity of the security title or liens set forth in the deeds of trust securing the Loan or the other Loan Documents.

. . .

11. No Waiver of Remedies. Except as expressly set forth herein, nothing contained in this Agreement shall prejudice, act as, or be deemed to be a waiver of any right or remedy available to [the Bank] by reason of the occurrence or existence of any fact, circumstance or event constituting a default or an Event of Default under the Loan or the Loan Documents.

The Assumption Agreement also contains a release of all claims against the Bank and recites that it is entered into based on advice of counsel, and that there are no oral agreements that modify or contradict the terms of the Assumption Agreement.

To induce the Bank to allow Grace to assume the terms of the Note, Mr. and Mrs. Morrow executed a Continuing Guaranty (Guaranty 3). In Guaranty 3, each of the Morrows, jointly and severally, guarantee the prompt and full payment of all indebtedness owed to the Bank by Grace, including, but not limited to, all amounts

7

due and owing the Bank under the Note, as modified. Like the earlier guaranties, Guaranty 3 contains a specific waiver of the provisions of the Anti-Deficiency Statute:

> Further, Guarantor expressly waives all rights, remedies, claims and defenses based upon or related to Sections 51.003, 51.004 and 51.005 of the Texas Property Code, to the extent the same pertain or may pertain to any enforcement of this Guaranty.

Guaranty 3 also provides that "[n]othing herein shall be construed to cancel, amend, discharge or limit any other guaranty or similar obligation executed by Guarantor in favor of Lender."

In December 2009, the Bank, Grace, Cypresswood, and the Morrows executed a Reinstatement, Renewal, Extension and Modification Agreement, (Renewal Agreement). The Renewal Agreement provides for monthly payments of $23,108 beginning in December 2009, with a final balloon payment due in November 2010. The Renewal Agreement also provides that in the event of a default by Grace, the holder of the Note may elect to exercise any or all rights, powers, and remedies allowed by "the Deed of Trust and all writings related to the Note," or "by law, including the right to accelerate the maturity of the Note."

Paragraph 8 of the Renewal Agreement states:

> The liens and security interests are ratified and confirmed as continuing to secure the payment of the Note, including this [Renewal Agreement]. Nothing herein shall in any manner diminish, impair or extinguish the Note or the liens and security interests securing it. The liens and security interests are not waived.

In addition, Paragraph 12 of the Renewal Agreement provides:

> Guarantors. STEPHEN A. MORROW and SANDRA J. MORROW remain as guarantors under their Guaranty Agreements and reaffirm their absolute and unconditional guarantee of the payment of the Note

as reinstated, modified, renewed and extended herein.

Finally, Paragraph 13 of the Renewal Agreement provides:

> Original Borrower: [Cypresswood], a Texas joint venture, the Original Borrower, by execution hereof acknowledges its continuing liability as Original Borrower with respect to the payment of the Note as reinstated, renewed, extended and modified herein.

Grace and Cypresswood eventually defaulted on the required payments. The Bank sent a notice of default and demand for payment to Grace, Cypresswood, and the Morrows in September 2010. When the default was not cured, the Bank accelerated the maturity of the Note and demanded full payment of all amounts owed. When the Bank did not receive full payment, the Bank posted the Property for foreclosure. The Bank purchased the Property at the ensuing foreclosure sale. After crediting the amount paid for the Property at the foreclosure sale against the amount owed to the Bank on the Note, a deficiency of $370,606.26 remained.[3] In addition, following the foreclosure sale purchase, the Bank paid the Property's outstanding 2010 real estate taxes of $61,200, which it added to the amount owed as permitted by the Note and related Loan Documents.

### B.    The Bank's lawsuit

The Bank sent written demand for payment of the full outstanding balance to Grace, Cypresswood, Redwood Properties, Zamorano, and both Morrows. When no payment was received, the Bank sued those parties, seeking to recover all amounts it alleged were owed under the Note and related Loan Documents. The Bank eventually filed a traditional motion for final summary judgment, and it later settled with Zamorano and Redwood Properties.

---

[3] The deficiency consisted of $300,965.68 in principal, $65,018.68 in interest accrued through June 7, 2011, and late charges of $4,621.60. In addition, interest continues to accrue at the rate of $66.88 per day from June 8, 2011 until the outstanding balance is paid.

Appellants filed a single response to the Bank's motion. In their response, appellants gave many reasons why the trial court should deny the Bank's motion: (1) the trial court should abate the Bank's lawsuit in favor of another lawsuit involving a different lender, Regions Bank, and a different loan; (2) the trial court should dismiss the Bank's lawsuit for lack of subject matter jurisdiction because the Cypresswood bankruptcy court retained exclusive jurisdiction; (3) appellants conditionally requested arbitration to the extent the Bank was seeking to enforce its rights under Guaranty 1, the Modification Agreement, or Guaranty 3; (4) the Bank failed to state on what basis it was seeking a final summary judgment and therefore failed to meet its burden of proof; (5) there had been no release and waiver of the Texas Anti-Deficiency Statute and there were at least fact issues on the existence of a deficiency following the foreclosure sale; and (6) the Bank presented no evidence or law supporting its request for recovery of attorney's fees. Appellants also objected to the Guido Piggott affidavit, which the Bank had attached to its motion for summary judgment as proof, because it allegedly contained hearsay and improper legal conclusions and was not based on Piggott's personal knowledge.

In addition to their summary judgment response, appellants filed a pleading entitled "Motion to Abate and Consolidate, Amended Original Answer, Verified Denial, Amended Affirmative Defenses, Counterclaim, Motion for Determination of Fair Market Value and Jury Demand." In addition to containing affirmative defenses and verified denials, this new pleading contained counterclaims for (1) fraudulent inducement and (2) a determination of the Property's fair market value pursuant to the Texas Anti-Deficiency Statute. Appellants also asked the trial court to abate the lawsuit and consolidate it with the earlier-filed lawsuit involving the Regions Bank loan.

The Bank then filed a reply to appellants' summary judgment response, in

which it argued its motion for final summary judgment was broad enough to dispose of the counterclaims contained in the amended answer because they were a restatement of the same arguments barred by the express provisions of the Loan Documents, including the provisions waiving the Texas Anti-Deficiency Statute. The Bank also objected to appellants' summary judgment evidence, including the affidavits of Mr. Morrow, Deborah Fritsche, and Lori Hood.

During the summary judgment oral hearing, the trial court questioned appellants' trial counsel on the request for arbitration included in their summary judgment response. Appellants' trial counsel confirmed that her request was conditional. The trial court denied the request.

Appellants never set their Motion to Abate and Consolidate this case with the Regions Bank lawsuit for either an oral hearing or written submission and never obtained a ruling from the trial court on those issues. Appellants also never requested a ruling from the trial court on their objections to the evidence the Bank submitted in support of its motion for final summary judgment.

Following the hearings, the trial court signed a Final Summary Judgment in favor of the Bank against appellants, jointly and severally, for all deficiency amounts owed to the Bank. The trial court's final summary judgment also stated that "all relief not awarded in this Judgment is hereby denied." In addition, the trial court signed an order striking appellants' summary judgment evidence, including those parts of Mr. Morrow's affidavit interpreting the written loan documents as well as those portions of Lori Hood's affidavit addressing the reasonableness of the Bank's requested attorney's fees.

Appellants timely filed their notice of appeal. In this appeal, appellants have not challenged the trial court's final summary judgment on their fraudulent inducement cause of action, the award of attorney's fees, or the trial court's order

11

striking their summary judgment evidence.

ANALYSIS

In a single issue on appeal, appellants contend the trial court erred when it granted the Bank's motion for summary judgment. Appellants make many separate arguments in support of that general contention. First, appellants assert the trial court should have dismissed the Bank's lawsuit due to a lack of subject matter jurisdiction because the Cypresswood bankruptcy court retained exclusive jurisdiction over all matters related to the bankruptcy. Second, appellants contend the trial court erred when it failed to abate and consolidate the Bank's lawsuit with the earlier-filed Regions Bank litigation. Third, appellants argue the trial court erred when it refused to compel the parties to arbitrate their dispute. Fourth, appellants contend the trial court erred when it granted the Bank's motion for summary judgment because the Bank did not specify the grounds for summary judgment in the motion. Fifth, appellants assert the Bank's motion was based on inadmissible evidence. Sixth, they argue the trial court incorrectly determined that appellants had waived their rights, remedies, claims, and defenses under the Texas Anti-Deficiency Statute. Then, based on the latter proposition, appellants contend the trial court erred in granting the Bank's motion because (1) there was inadequate time for discovery on the issue of the market value of the Property, and (2) there were genuine issues of material fact on the market value of the Property. Seventh, in an argument raised for the first time on appeal, appellants contend that a waiver of an offset based on the fair market value of the Property creates an unenforceable penalty. We address each argument in turn.

## I.      Standard of review

We review the trial court's grant of summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam)

(citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.2d 184, 192 (Tex. 2007)). We consider all of the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2006).

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In particular, a plaintiff moving for summary judgment must conclusively prove all essential elements of its claim. *Cullins v. Foster*, 171 S.W.3d 521, 530 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)).

## II.    The trial court had subject matter jurisdiction over this suit.

We turn first to appellants' argument that the trial court should have dismissed the Bank's lawsuit because they contend the Cypresswood bankruptcy court retained exclusive jurisdiction over this dispute. We disagree.

By arguing the bankruptcy court had exclusive jurisdiction, appellants challenge the trial court's subject matter jurisdiction. Whether a trial court has subject matter jurisdiction is a question of law, which we review de novo. *Edwards v. City of Tomball*, 343 S.W.3d 213, 220 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

It is undisputed that the bankruptcy court confirmed the Plan before this lawsuit was filed by the Bank. Although the bankruptcy case remains open due to malpractice claims, it is undisputed that those claims are not relevant to, or in any

way connected with, the Bank's lawsuit.

Moreover, the Plan contemplates the very scenario involved in the Bank's lawsuit. The Plan provides that Cypresswood is authorized to enter into contracts and to sue and be sued in any court or administrative agency. The evidence shows that appellants used this authority to execute the Renewal Agreement, which acknowledged, reaffirmed, and extended their obligations under the Note and Loan Documents. The Plan also envisions the possibility that Grace's efforts to sell or develop the Property would not be successful and as a result, it provides that so long as Grace makes the payments required by the Plan, the Bank will not foreclose on the Property, but if Grace fails to make a required payment, the Bank may proceed with all of its rights and remedies, including foreclosure.

In *In re Craig's Stores, Inc.*, the Fifth Circuit stated that "after a debtor's reorganization plan had been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." 266 F.3d 388, 390 (5th Cir. 1991); *see also In re U. S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002). Because the Plan contemplates this suit as explained above, we conclude that no implementation or execution are necessary for it to proceed. We also conclude that resolution of the Bank's suit does not turn on the application of bankruptcy law and will not interfere with the bankruptcy court's jurisdiction. *See Dunn v. Menassen*, 913 S.W.2d 621, 623–24 (Tex. App.—Corpus Christi 1995, writ denied) ("In order to preclude a State court's jurisdiction, the state claim must interfere with the jurisdiction of the Bankruptcy Court."). Therefore, we hold the trial court properly denied appellants' jurisdictional challenge. *See In re Craig's Stores*, 266 F.3d at 390 ("Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without

the protection of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.") (internal citation omitted); s*ee also Fitch v. Jones,* 441 S.W.2d 187, 188 (Tex. 1969) ("The mere pendency of a bankruptcy proceeding does not divest the state court of jurisdiction.").

## III. Appellants did not preserve their abatement issue for appellate review.

Appellants next complain that the trial court erred when it granted the Bank's motion for summary judgment rather than abating and consolidating the Bank's lawsuit with the earlier-filed Regions Bank litigation. In response, the Bank asserts appellants failed to preserve this issue for appellate review because they "never set the motion [to abate and consolidate] for written submission, never commenced a hearing on the motion and never obtained a ruling from the trial court." We agree with the Bank.

As a prerequisite to appellate review of a complaint, the record must show that the complaint was made to the trial court by a timely request, objection, or motion, and the trial court (1) ruled on the request, objection, or motion, either expressly or implicitly, or (2) refused to rule, and the complaining party objected to that refusal. Tex. R. App. P. 33.1(a); *Gonerway v. Corr. Corp. of Am.*, No. 05-11-01524-CV, 2013 WL 1277842, at *2 (Tex. App.—Dallas Feb. 14, 2013, no pet.). Here, while appellants filed their motion for abatement and consolidation as part of an amended pleading, the record does not reflect that appellants called the motion to the trial court's attention in any way. *See Approximately $1,013.00 v. State*, No. 14-10-01255-CV, 2011 WL 5998318, at *2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.) ("Showing that a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling."). The record also does not demonstrate that the trial court (1) ruled on the motion, or (2) refused to rule on

the motion and appellants objected to that refusal to rule. Therefore, appellants have failed to preserve this issue for appellate review. *Wheeler v. Greene*, 194 S.W.3d 1, 7 (Tex. App.—Tyler 2006, no pet.).

**IV.  Appellants did not meet their burden in seeking arbitration.**

In a single paragraph of their opening brief, appellants next contend the trial court erred when it granted the Bank's motion for summary judgment because the dispute should have been submitted to arbitration instead. Appellants do not cite any legal authority in support of this contention, however. Nor do appellants address the trial court's stated reasons for denying arbitration. Instead, appellants address these reasons and provide authority for the first time in their reply brief.

We need not decide whether appellants waived their arbitration complaint by explaining it for the first time in their reply brief, however, because we conclude they have not shown that the trial court erred in refusing to abate the litigation and order the parties to arbitration. A party attempting to compel arbitration must establish (1) that a valid arbitration agreement exists, and (2) if so, that the claims asserted fall within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005). If these two showings are made, the burden shifts to the party opposing arbitration to present a valid defense to the agreement, and absent evidence supporting such a defense, the trial court must compel arbitration. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003).

Initially, appellants included a conditional request for arbitration in their response to the Bank's motion for summary judgment. Appellants did not attach any arbitration agreements to that response. At the beginning of the oral hearing on the Bank's motion for summary judgment, the trial court asked appellants if the request was serious. In response, appellants' counsel expressed uncertainty

whether the Bank's lawsuit involved only post-bankruptcy documents or "everything in the bank's file." She then stated appellants would file a motion to compel arbitration "if it's everything in the bank's file." During the entire arbitration discussion, appellants did not bring any arbitration agreements to the attention of the trial court and thus never addressed whether the Bank's claims fell within the scope of a valid arbitration agreement. When appellants indicated they had nothing further to add regarding arbitration, the trial court orally denied the request for arbitration because the appellants had not provided evidence of a valid arbitration agreement. Appellants did not raise the subject of arbitration again with the trial court.

We hold appellants did not establish the existence of a valid arbitration agreement covering the claims at issue in the litigation. Because appellants did not meet their dual burden, we conclude the trial court did not err in refusing to compel arbitration.

**V.**   **Appellants did not preserve for appellate review their complaint that the Bank's motion failed to specify the grounds for summary judgment.**

Appellants next complain that the trial court erred when it granted the Bank's motion for summary judgment because they contend the Bank did not specify the grounds for summary judgment in the motion. Once again, we conclude appellants failed to preserve this issue for appellate review.

When a non-movant believes a motion for summary judgment is unclear, ambiguous, or lacks specificity, it must file special exceptions. *Brocail v. Detroit Tigers, Inc.*, 268 S.W.3d 90, 100 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). That party must then obtain a ruling on the special exceptions to preserve the issue for appellate review. Tex. R. App. P. 33.1; *Brocail*, 268 S.W.3d at 100. Because appellants did not specially except to the Bank's motion for summary

17

judgment, they did not preserve this argument for appellate review, and we do not consider it. *Gammill v. Fettner*, 297 S.W.3d 792, 801 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In their reply brief, appellants contend the Bank's appellate brief finally provided the grounds for summary judgment that were missing from the motion itself. Appellants then argue for the first time that the Bank did not establish all of the elements of a deficiency suit. Specifically, appellants contend the Bank did not prove a valid foreclosure sale because the summary judgment evidence did not establish that the Bank provided proper notice of the sale as required by section 51.002(b)(1)–(2) of the Texas Property Code.[4]

Appellants should have raised this issue in their opening brief. *See* Tex. R. App. P. 38.1(f); *Marsh v. Livingston*, No. 14-09-00011-CV, 2010 WL 1609215, *4 (Tex. App.—Houston [14th Dist.] April 22, 2010, pet. denied) (mem. op.) (rule against adding new issues in reply brief holds true even if new issue is in response to matter in appellee's brief). Even if they had, however, it would not change the result because we conclude the summary judgment evidence establishes the Bank provided proper notice of the foreclosure sale.

Appellants admit that if the deed of trust permits it, the recitals in a trustee's deed constitute prima facie evidence that the notice requirements of the Property

---

[4] Section 51.002(b) provides in pertinent part:

. . . [N]otice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

(1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold; [and]

(2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subsection (1). . . .

Tex. Prop. Code Ann. § 51.002(b) (West 2007).

Code were satisfied. *See Deposit Ins. Bridge Bank, N.A., Dallas v. McQueen*, 804 S.W.2d 264, 266 (Tex. App.—Houston [1st Dist.] 1991, no writ) (holding that recitals in a deed are presumed to be correct unless rebutted by competent evidence). Appellants contend the deed of trust in the present case does not contain such a statement, but they are incorrect.

Paragraph 13(f) of the deed of trust provides:

> The recitals and statements of fact . . . contained in any conveyance to the purchaser or purchasers at any such sale shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed.

The Substitute Trustee's Deed executed after the foreclosure sale notes that the sale was conducted on November 2, 2010

> after public notice had been given of the time, place and terms of such sale by posting written notice thereof at least twenty-one (21) days before the date of such sale at the Courthouse door of Harris County, Texas, and by filing a copy of such notice in the office of the County Clerk of such County at least twenty-one days preceding the date of such sale.

Because the summary judgment evidence establishes that the Bank provided proper notice of the foreclosure sale, appellants' argument that the Bank did not prove a valid foreclosure sale fails.

## VI. Appellants' evidentiary complaints do not show that the trial court erred in granting the Bank's motion for summary judgment.

Turning to the merits of the summary judgment, appellants assert that the Bank's motion relied on inadmissible evidence. More specifically, they argue that four paragraphs of the affidavit of Guido Piggott, the Bank's custodian of records, contain hearsay and legal conclusions not supported by underlying facts.

19

Summary judgment evidence must be presented in a form that would be admissible at trial. *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Hearsay in an affidavit is a defect of form. *Id.* at 112, n.9. To complain of such a defect, a party must object in writing to the form of the summary judgment evidence, place the objection before the trial court, and obtain a ruling. *Id.* Failure to accomplish all three steps waives the objection. *Id.* While appellants did file written objections to Piggott's affidavit, they did not obtain rulings on those objections. Therefore, appellants have waived their hearsay objections. *Id.*

An affidavit that merely states a legal conclusion is incompetent to establish the existence of a fact in support of a motion for summary judgment. *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984). Thus, an objection that an affidavit states a legal conclusion relates to a defect in substance, and it may be raised for the first time on appeal. *Progressive County Mut. Ins. Co. v. Carway*, 951 S.W.2d 108, 117 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). Even if the trial court errs by considering conclusory evidence at summary judgment, however, we will not reverse unless the party requesting reversal can demonstrate that the error probably caused the rendition of an improper judgment. *Walston v. Anglo-Dutch Petroleum (Tenge) L.L.C.*, No. 14-07-00959-CV, 2009 WL 2176320, at *8 (Tex. App.—Houston [14th Dist.] July 23, 2009, no pet.) (mem. op.).

Here, the relevant document discussed in each of the allegedly conclusory paragraphs was attached to Piggott's affidavit and included in the summary judgment record. Accordingly, we conclude the Bank provided adequate evidence to support each challenged statement by Piggott. *Delcor USA, Inc. v. Texas Induc. Specialties, Inc.*, No. 14-11-00048-CV, 2011 WL 6224466, at *3 (Tex. App.—Houston [14th Dist.] Dec. 13, 2011, no pet.) (mem. op.) (holding that attached

20

invoices, customer balance sheets, and payment checks were sufficient to support affidavit testimony that a contract existed between the parties). Moreover, even if the challenged paragraphs contained unsupported legal conclusions, appellants have not demonstrated that the trial court's consideration of them resulted in the rendition of an improper judgment. The paragraphs describe the effects of various documents underlying this litigation.[5] In each case, a copy of the referenced document was attached to Piggott's affidavit, so the court could determine the legal effect of the document for itself. Because the underlying documents addressed in each of the challenged paragraphs of Piggott's affidavit were included in the summary judgment record, we conclude any error in admitting the challenged portions of Piggott's affidavit was harmless. *See Peoples v. Genco Fed. Credit Union*, No. 10-09-00032-CV, 2010 WL 1797266, at *4 (Tex. App.—Waco 2010, no pet.) (mem. op.) (holding consideration of conclusory affidavit regarding contract was harmless when underlying contract was in summary judgment

---

[5] In their brief, appellants challenge paragraphs 8, 9, 10, 12, and 13. As to paragraph 13, however, appellants do not explain why they believe it contains inadmissible evidence. Therefore, their challenge to paragraph 13 is waived. Tex. R. App. P. 38.1(i). Appellants did specifically address the remaining paragraphs in their brief. Paragraph 8 deals with the Assumption Agreement and Special Warranty Assumption Deed. In paragraph 8, Piggott stated "pursuant to [the Assumption Agreement] Grace . . . assumed payment of the Note and all other obligations." Piggott continued that, as a result of the Special Warranty Assumption Deed, "title to the Property was transferred to Grace from Cypresswood." Paragraph 9 addresses the Renewal Agreement. In paragraph 9, Piggott stated that as a result of the Renewal Agreement, "the terms of the Note as assumed were reinstated, renewed, modified and extended." Paragraph 10 discusses Guaranty 3. According to Piggott, "[i]n order to induce the Bank to allow [Grace] to assume the terms of the Note, [Mr. and Mrs. Morrow] executed [Guaranty 3] whereby each of the Guarantors, jointly and severally, absolutely and unconditionally, guaranteed the prompt and full payment of all indebtedness owing the Bank by Grace, including but not limited to, all amounts due and owing the Bank under the Note, as modified." Finally, paragraph 12 references the Substitute Trustee's Deed. In paragraph 12, Piggott states: "Due to Grace, Cypresswood and all guarantors' failure to pay the full amount due and owing the Bank under the Note, a foreclosure sale was conducted in accordance with the Loan Documents and state law on November 2, 2010, and the Bank was the successful purchaser of the Collateral. On November 2, 2010, the Substitute Trustee's Deed was recorded in the Harris County Real Property Records under Clerk's File No. 20100471249, which evidences the Bank as the owner of the Collateral."

record).

Finally, appellants challenge Piggott's affidavit generally because they contend it does not establish that it was based on personal knowledge. In his affidavit, Piggott stated that he obtained personal knowledge of the facts contained in his affidavit through his position as an executive vice president of the Bank. Piggott also stated that he was a records custodian for the Bank and then explained the Bank's ordinary practices for maintaining records and averred that the attached documents were "made or kept in the exact manner as described herein." Appellants do not point out how Piggott's affidavit is deficient or indicate in any manner what additional information should have been included in Piggott's affidavit to establish his personal knowledge.

This Court recently held that an affidavit's failure to affirmatively show how the affiant has personal knowledge is a defect of form, so a litigant must object and obtain a ruling from the trial court to preserve this complaint. *Washington DC Party Shuttle, LLC v. IGuide Tours*, No. 14-12-00303-CV, 2013 WL 3226768, at *10 (Tex. App.—Houston [14th Dist.] June 27, 2013, no pet. h.) (en banc). Because appellants did not obtain a ruling, they waived their personal knowledge objections. In any event, we conclude the statements by Piggott summarized above adequately demonstrated his personal knowledge. *See Rockwall Commons Assoc., Ltd.* v. *MRC Mortg. Grantor Trust I*, 331 S.W.3d 500, 511 (Tex. App.—El Paso 2010, no pet.) (holding records custodian's affidavit demonstrated personal knowledge); *see also Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 330 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding affiant established personal knowledge "via her position as vice president and assistant corporate secretary" of bank); *Ghia v. Am. Express Travel Related Serv.*, No. 14-06-00653-CV, 2007 WL 2990295, at *2 (Tex. App.—Houston [14th Dist.] Oct. 11, 2007, no pet.) (mem.

op.) (holding custodian of records' affidavit adequately demonstrated his personal knowledge). Accordingly, appellants have not shown any evidentiary errors that require reversal of the summary judgment.

## VII. Appellants waived the Texas Anti-Deficiency Statute.

Appellants next assert the trial court erred in granting the Bank's motion for summary judgment because it incorrectly determined they had waived the Texas Anti-Deficiency Statute. In support of this contention, appellants make several different arguments, which we address in turn.

### A. Waivers of the Anti-Deficiency Statute are not void as against public policy.

First, appellants contend that any waiver of the Texas Anti-Deficiency Statute is void as against public policy. Many courts have held, however, that a waiver of the Texas Anti-Deficiency Statute does not violate public policy. *LaSalle v. Bank Nat'l Assoc. v. Sleutel*, 289 F.3d 837, 842 (5th Cir. 2002) (holding Texas public policy does not prohibit waiving the Texas Anti-Deficiency Statute); *Interstate 35/Chisam Rd., L.P. v. Moayedi*, 377 S.W.3d 791, 801 (Tex. App.—Dallas 2012, pet. filed) (same); *Kelly v. First State Bank of Cent. Tex.*, No. 03-10-00460-CV, 2011 WL 6938522, at *8–9 (Tex. App.—Austin, Dec. 30, 2011, pet. granted, judgm't vacated w.r.m.) (mem. op.) (same); *Segal v. Emmes Capital, L.L.C.*, 155 S.W.3d 267, 279–80 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (same). The cited cases have addressed, and rejected, each argument raised by appellants in support of their public policy argument, and we agree with their resolution of the issue. Because appellants have not put forward any new reason to depart from this reasoning, we hold that the waiver of rights, remedies, claims, and defenses under the Texas Anti-Deficiency Statute are not against the public policy of Texas.

**B. The post-bankruptcy Assumption Agreement contains a valid waiver of the Texas Anti-Deficiency Statute.**

Appellants next argue that "the only loan agreement standing after the various renewals and bankruptcy filings is the [Assumption Agreement,] and it contains no waiver of the Texas Anti-Deficiency Statute." While we disagree with appellants' premise that the Cypresswood bankruptcy eliminated all pre-bankruptcy debts and contractual obligations, even if that were true, the Assumption Agreement includes a valid waiver of the Texas Anti-Deficiency Statute.

First, the Plan expressly provided that Cypresswood did not receive a discharge of any debt. In addition, as mentioned above, the Plan allowed Cypresswood to enter into binding contracts that it believed were in its best interest. The Plan also provided that Grace would assume all obligations owed to the Bank, including the obligation to repay the loan in accordance with all terms, provisions, and other obligations of the applicable notes and deeds of trust. The Plan expressly contemplated that Cypresswood, Grace, and the Morrows would enter into an assumption agreement putting those requirements into effect.

Pursuant to the Plan, Cypresswood, Grace, and the Morrows executed the Assumption Agreement, the pertinent parts of which are set out above. In the Assumption Agreement, Cypresswood and Mr. Morrow agreed that the "Loan Documents" represented "valid and legally binding obligations of [Cypresswood] and [Mr. Morrow]." Grace agreed to pay and perform all of the payment and performance obligations of Cypresswood and to be bound by the terms of the "Loan Documents." In addition, the Morrows agreed "to timely pay and perform all of the obligations for which [Grace] shall have liability under the Loan Documents." Most importantly for resolution of this issue, the parties agreed "that

24

the Borrower Parties [—defined as Cypresswood, Grace, and Mr. and Mrs. Morrow—] have no defenses, setoffs, objections, claims, counterclaims, or causes of action of any kind or nature whatsoever with respect to the Loan or the Loan Documents . . . ." The quoted language waived appellants' right to the fair market value set-off provided by the Texas Anti-Deficiency Statute. *See Haggard v. Bank of the Ozarks, Inc.*, 668 F.3d 196, 202 (5th Cir. 2012) (holding that similar provision waived the guarantor's right to a fair market value set-off under the Texas Anti-Deficiency Statute).

### C. Guaranty 3 also contains a valid waiver of the Texas Anti-Deficiency Statute.

With respect to the guaranties by Mr. and Mrs. Morrow, appellants contend Guaranties 1 and 2 are not relevant because they predate the Cypresswood Bankruptcy Plan. Appellants then argue that the waiver of the Texas Anti-Deficiency Statute found in Guaranty 3, the only post-bankruptcy guaranty agreement, is not effective because it is not conspicuous. This argument ignores that the Morrows also agreed to a valid waiver of the statute in the post-plan Assumption Agreement, as explained above. Moreover, we once again disagree with appellants' basic premise that the pre-bankruptcy Guaranties are not relevant.

But even if Guaranty 3 were the only relevant agreement, we conclude it also contains a valid waiver of the Texas Anti-Deficiency Statute. Just as a waiver of the Texas Anti-Deficiency Statute does not violate public policy, there is also no requirement that the waiver be conspicuous. *Segal*, 155 S.W.3d at 283.

Appellants also argue the waiver found in Guaranty 3 is ineffective because it does not provide sufficiently specific notice of the defense being waived. The Guaranty 3 waiver provides: "Guarantor expressly waives all rights, remedies, claims and defenses based upon or related to Sections 51.003, 51.004, and 51.005

25

of the Texas Property Code, to the extent the same pertain to or may pertain to any enforcement of this Guaranty." We conclude this language was sufficiently specific to provide notice to the Morrows that they were waiving their right to a fair market value set-off under the Texas Anti-Deficiency Statute. *New Millennium Homes, Inc. v. Texas Cmty. Bank, N.A.*, No. 09-12-00073-CV, 2013 WL 645235, at *3 (Tex. App.—Beaumont Feb. 21, 2013, no pet.) (mem. op.); *Moayedi*, 377 S.W.3d 795–802; *Kelly*, 2011 WL 6938522, at *7; *Segal*, 155 S.W.3d at 277–81.

*     *     *

Because we hold that appellants waived their right to a fair market value set-off pursuant to the Texas Anti-Deficiency Statute, we need not address their arguments that the trial court erred in granting summary judgment for the Bank because (1) there was inadequate time for discovery on the issue of the market value of the Property, and (2) there were genuine issues of material fact on the market value of the Property. The resolution of those issues is immaterial to the outcome of this appeal.[6] *See Segal*, 155 S.W.3d at 284 ("Because the Segals validly waived their rights to seek a fair-market-value determination and an offset, it is immaterial whether the Segals raised a fact issue on the three properties fair-market value.").

## VIII. Appellants did not plead the affirmative defense of penalty.

Finally, appellants contend that any waiver of the right to an offset against the deficiency based on the fair market value of the Property creates an unenforceable penalty. An assertion that a contractual provision creates an

---

[6] We also note that appellants failed to preserve their argument that the time for discovery was inadequate because they did not file a verified motion for continuance in the trial court. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996); *Triad Home Renovators, Inc. v. Dickey*, 15 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

unenforceable penalty is an affirmative defense that must be raised in the party's responsive pleadings. *See* Tex. R. Civ. P. 94; *Dunlap v. Gayle*, No. 13-12-00105-CV, 2013 WL 1500377, *6 (Tex. App.—Corpus Christi April 11, 2013, no pet.) (mem. op.); *Chan v. Montebello Development Co., L.P.*, No 14-06-00936-CV, 2008 WL 2986379, *2 n.4 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.). Appellants did not plead unenforceable penalty in their answer or raise it in their summary judgment response. Accordingly, they have waived this defense. *See Hassell Const. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 667 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

## CONCLUSION

Having addressed and rejected each argument contained in appellants' single issue on appeal, we overrule appellants' issue and affirm the trial court's final judgment.


/s/     J. Brett Busby
        Justice


Panel consists of Justices Frost, Brown, and Busby.